**Rudolph TATUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–91–424–CR.**

Court of Appeals of Texas,
Austin.

Aug. 12, 1992.

Rehearing Overruled Oct. 7, 1992.

William R. Moore, San Angelo, for appellant.

Franklin D. Brown, Asst. Dist. Atty., San Angelo, for appellee.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

Over his plea of not guilty, the jury found appellant Rudolph Tatum guilty of possession of less than twenty-eight grams of cocaine. *See* Tex.Health & Safety Code Ann. §§ 481.102, 481.115 (Pamph.1992). The jury assessed Tatum's punishment, enhanced, at eighty-five years imprisonment. The trial court rendered judgment on the verdict. Tatum appeals. We will reverse and reform the judgment to reflect an acquittal.

### THE CONTROVERSY

In the early afternoon of December 29, 1990, San Angelo police officers received a call that two men, one black and one Hispanic, were inside an abandoned San Angelo house. Upon arriving at the house, Officer John McGuire looked through a window and saw a black man standing in the kitchen area of the house. He did not see a Hispanic man in or near the house.

McGuire testified that the black man, later determined to be Tatum, climbed through a broken window and fled from the house when he saw McGuire approaching. McGuire ran around the house in pursuit of Tatum. As McGuire turned the corner of the house, he saw Tatum fall over a fence. Although McGuire ordered Tatum to stop and raise his hands, Tatum

got up and ran a few feet further. Before stopping, Tatum raised his right hand; a couple of steps later, he raised his left hand and then stopped. McGuire ordered Tatum to lie down on the ground; when Tatum complied, Officer Stewart Dickson, Jr., handcuffed him.

Officers McGuire and Dickson decided they needed to search the house to see whether the Hispanic man remained inside. They did not find the Hispanic man, but they did find several items later introduced into evidence. One item was an overturned soft-drink can, with a piece of cotton lying in the concave bottom of the can. The officers also found a jar bearing Tatum's fingerprints and an orange syringe cap. The jar was full of water.

After leaving the house and searching Tatum's person, the officers searched the area around the house. Approximately six feet from where Tatum was lying, the officers found a syringe containing 0.14 of a gram of cocaine. According to McGuire, the syringe was lying near the place where Tatum raised his left hand before stopping, but neither McGuire nor any other officer saw Tatum drop the syringe. McGuire testified that, based on his training and experience, he could determine that the syringe had not been lying in the grass very long. Consistent with San Angelo police procedure, the officers did not examine the syringe for fingerprints.

Lieutenant John Sparks of the San Angelo Police Department provided evidence tending to link the items found inside the house to drug use. He testified that those who inject cocaine into their veins commonly prepare the cocaine solution by mixing cocaine with water in the bottom of a soft drink can. According to Sparks, drug users then place cotton into the solution, purportedly to filter out "impurities" in the cocaine solution as it passes into the syringe. Sparks also testified that the area in which Tatum was arrested was known as a heavy drug-use area.

After offering the foregoing evidence, the State rested. The defense rested with-out offering evidence. The jury found Tatum guilty of possession of cocaine. During the punishment phase of the trial, Tatum pleaded "not true" to the four enhancement paragraphs in the indictment. The jury found the allegations were true and sentenced Tatum to eighty-five years imprisonment. Tatum appeals.

## DISCUSSION

In his second point of error, Tatum contends the trial court erred in rendering judgment on the verdict because the evidence was insufficient to prove Tatum had "possession" of a controlled substance. We agree.

■ In a prosecution for possession of a controlled substance, the State must prove (1) the defendant exercised care, custody, control or management over the contraband, and (2) the accused knew that the matter possessed was contraband. *Castro v. State*, No. 835–90, slip op. at 2, 1992 WL 1131 (Tex.Crim.App. Jan. 8, 1992); *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986).

■ In reviewing a challenge to the legal sufficiency of the evidence to establish those elements, we must view the record in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1974); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). The legal-sufficiency standard applies to circumstantial-evidence cases as well as to direct-evidence cases. *Castro,* slip op. at 2.

Because the finding of Tatum's guilt rests entirely on circumstantial evidence, however, the State carries certain burdens on appeal. First, we cannot sustain the conviction if the circumstances do not exclude every other reasonable hypothesis except Tatum's guilt. *See Humason v. State*, 728 S.W.2d 363, 366 (Tex.Crim.App. 1987).[1] Second, to show Tatum exercised

---

1. The court of criminal appeals abrogated the "reasonable hypothesis analytical construct" for

"care, custody, control or management" over the cocaine, the State must have adduced evidence of additional independent facts and circumstances which affirmatively link Tatum to the cocaine. *See Flores v. State*, 650 S.W.2d 429, 430 (Tex.Crim.App. 1983); *see also Cannon v. State*, 807 S.W.2d 631, 634 (Tex.App.1991, no pet.) (mere presence at a place where a controlled substance is found is not sufficient to show possession); *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985) (" '[P]ossession' means more than being where the action is; it involves the exercise of dominion and control over the thing actually possessed.").

An affirmative link generates a reasonable inference that the accused knew of the existence of the contraband and exercised control over it. *Castro*, slip op. at 3. The link may be circumstantial if the evidence excludes every other hypothesis except the guilt of the accused. *Id.*

■ This Court has collected the factors identified by the court of criminal appeals as tending to establish affirmative links between an accused and contraband. *See Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.1991, pet. ref'd); *Trejo v. State*, 766 S.W.2d 381, 384–85 (Tex.App.1989, no pet.). From our review of those factors, we conclude the evidence as a whole fails to exclude every reasonable hypothesis other than Tatum's guilt. *See Humason*, 728 S.W.2d at 366.

The officers did not see Tatum drop the syringe, they did not find drugs or drug paraphernalia in his possession, and they did not check the syringe for his fingerprints. Tatum was not shown to be in exclusive possession or control of the house or its surrounding area, and he made no statements connecting himself to the cocaine. No witness testified Tatum appeared to be under the influence of drugs. Finally, the syringe lay in an area noted for drug use. We deem it particularly important that the State presented no evidence linking Tatum to the cocaine itself other than his proximity to a syringe when he was arrested.

The State emphasizes several affirmative links between Tatum and the cocaine: Tatum fled from the house when McGuire approached, indicating a consciousness of guilt; Tatum's fingerprints were on the jar, which may have been used in preparation of the cocaine solution; the officers found an orange syringe cap on the kitchen counter, possibly connecting the syringe found in the yard to the kitchen; the officers found the syringe between Tatum and the house, suggesting Tatum dropped the syringe during flight; and Tatum had needle marks on his arms when he was arrested.

Focusing on these links, the State contends "the following scenario can be inferred from viewing the evidence most favorable [sic] to the prosecution": Tatum bought cocaine from a nearby drug dealer; he entered the vacant house and prepared the cocaine for injection by combining cocaine and water; he drew the cocaine solution into the syringe; before injecting the solution, he was surprised by Officer McGuire and attempted to flee the house; and he dropped the syringe as he fled the house.

Although we agree this scenario is plausible, the fact remains that it is nothing more than conjecture on the part of the State. "[P]ossession cases in which the evidence is sufficient to support a conviction affirmatively connect the accused to the contraband by evidence which amounts to more than mere conjecture." *Dickey v. State*, 693 S.W.2d 386, 389 (Tex.Crim.App. 1984).

The State adduced no evidence affirmatively linking Tatum to the syringe, other than his proximity to it. Police officers found items arguably used to prepare a drug solution in the vacant house from which Tatum fled, but Officer Sparks testified drug users were common in that area. Another State's witness, Officer Larry Massey, testified that the house was possibly used as a "shooting gallery," a place

reviewing circumstantial-evidence cases in *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App. 1991). The construct, however, is still applicable to cases tried before November 6, 1991. This case was tried June 18, 1991.

where drug users congregate to prepare and use illegal drugs, and he conceded that anyone could have left the items in the house. No officer testified that the bottom of the soft-drink can still contained water, or that the piece of cotton was still moist, as it would likely be had Tatum just used it to "purify" the cocaine solution as the State contends.

The jar found in the house contained Tatum's fingerprints, but the jar itself was not contraband; its significance derived from Sparks's testimony that drug users mix water with cocaine to make a drug solution. There is no showing that Tatum mixed water with cocaine, however, and an alternative reasonable hypothesis is that Tatum was holding the jar for a legal, legitimate purpose.

Although the State argues that Tatum dropped the syringe during flight, this is nothing more than speculation under the evidence. Both McGuire and Dickson testified they had unobstructed views of Tatum as he fled, and neither of these experienced officers saw Tatum drop the syringe. Pointing to McGuire's testimony that Tatum raised his left arm more slowly than the right arm, the State infers that Tatum dropped the syringe just before stopping. Yet neither officer testified that Tatum's left hand was ever hidden from sight, and neither officer thought the gesture significant enough to search the ground near Tatum immediately after detaining him. Before searching the ground and finding the syringe, the officers handcuffed Tatum, entered the house and searched it, and then left the house and searched Tatum's person. Only after performing all these acts without finding contraband did the officers search the ground. Moreover, McGuire and Dickson, apparently perceiving danger, had drawn their revolvers during the pursuit and would likely have watched Tatum's left hand closely during the two or three steps it remained at his side. Yet they did not see Tatum discard the syringe.

The court of criminal appeals rejected similar affirmative links as sufficient evidence of guilt in *Herndon v. State,* 787 S.W.2d 408 (Tex.Crim.App.1990). In *Herndon,* police officers surrounded a house targeted as an amphetamine laboratory. When the police announced their presence, one of the men at the house fled in an automobile. The man, Herndon, was arrested when he wrecked the car during his flight. A jury convicted him of possession of phenylacetone found in the house and the court of appeals affirmed the judgment.

In reversing the conviction, the court of criminal appeals focused on the lack of evidence connecting Herndon to the contraband. The only contraband found was in the house, but no testimony placed Herndon in the house; the evidence placed him in the vicinity of the front porch when the officers arrived. Herndon had no contraband in the car or on his person. He was not under the influence of drugs, although the officers testified that he appeared to be a drug user. The State introduced no evidence showing that Herndon had any interest in the house or that he occupied the house in any way. The court of criminal appeals did not apply the "reasonable hypothesis" test because it held that the evidence was insufficient to link Herndon to the controlled substance "even after viewing the evidence in the light most favorable to the verdict." *Id.* at 409.

Several of the affirmative links identified by the State in the case at bar were present as well in *Herndon.* In each case, the suspect fled from the police. Each suspect was apparently a drug user, and each was in the vicinity of a controlled substance at or near the time of arrest. We do not believe the additional affirmative links in the present case, the syringe cap and the fingerprints on the jar, merit a different conclusion. *See also Thomas v. State,* 762 S.W.2d 721, 723–24 (Tex.App.1988, no pet.) (finding evidence insufficient to support conviction even though appellant was in a car with cocaine and possible drug paraphernalia, had a large amount of cash on his person, and acted "nervous" when stopped by police); *Flores v. State,* 756 S.W.2d 86, 88 (Tex.App.1988, pet. ref'd) (finding evidence insufficient to show affirmative links even though defendant ar-

rested in his own kitchen (1) fled from police (2) had needle marks on arms, and (3) stood within two feet of a balloon containing heroin when officers arrested him).

The present case is also analogous to *Gonzales v. State*, 809 S.W.2d 778 (Tex. App.1991, pet. ref'd). In *Gonzales* a police officer investigating a one-car accident arrested the driver for driving while intoxicated. During the course of the investigation of the accident, the officer found a key holder containing 0.46 of a gram of cocaine lying on the ground near the automobile. A blood sample revealed the presence of both alcohol and cocaine in the driver's blood at the time of the accident. The driver was convicted of possession of cocaine.

The court of appeals reversed the conviction, holding that insufficient affirmative links existed between the defendant and the cocaine to support the finding of guilt. The court stated, "Although the key holder was found in the general vicinity of the vehicle in which appellant was sitting, there was no evidence at trial to affirmatively link the key holder to either the vehicle or appellant." *Id.* at 780. The court noted that the evidence failed to exclude the reasonable hypothesis that the key holder could have been discarded by another person, or that it could have fallen off another car. *Id.* at 781.

"[A] conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting only to a strong suspicion or mere probability is insufficient." *Waldon v. State*, 579 S.W.2d 499, 502 (Tex.Crim.App.1979). Because the State failed to negate the reasonable hypothesis that someone else dropped the syringe, it did not prove Tatum possessed the cocaine. *See id.* ("Granted that there are highly suspicious facts here, the State has failed to prove the requisite affirmative link between the contraband in question

and the appellant."). We therefore do not believe a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[2]

Because we reverse Tatum's conviction on the second point of error, we need not address the remaining points of error. We set aside the conviction and reform the judgment to reflect an acquittal.

---

2. Our conclusion in this case underscores "the tension at play between the jury's prerogative to disbelieve a reasonable hypothesis of innocence raised by circumstantial evidence, and the reviewing court's duty to reverse where that reasonable hypothesis is extant." *See Geesa*, 820 S.W.2d at 159 n. 6.