Joseph Nathan **LASSAINT**, Appellant,

v.

The **STATE of Texas**, Appellee.

No. 13–01–587–CR.

Court of Appeals of Texas, Corpus Christi.

June 13, 2002.

James Francis Keegan, Houston, for appellant.

John Spencer Holleman, Jr., Dist. Atty., William Lee Hon, Asst. Dist. Atty., Livingston, for appellee.

Before Justices DORSEY, YAÑEZ and BAIRD[1].

## OPINION

CHARLES F. BAIRD, Justice
(Assigned).

Appellant was charged by indictment with the offense of possession with the intent to deliver more than 200 but less than 400 grams of cocaine. The indictment also alleged a prior felony conviction for the purpose of enhancing the range of punishment. A jury convicted appellant of the charged offense. Appellant pled true to the enhancement allegation, the trial judge assessed punishment at twenty years confinement and a fine of $1,000. Appellant raises four points of error contending the evidence is insufficient to support the jury's verdict. We sustain the first point and reverse the judgment of the trial court.

## I. Standard of Appellate Review

■ In determining whether the evidence is legally sufficient to sustain a conviction, we employ the standard of *Jackson v. Virginia* and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard is applicable to both direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Crim. App.1991), *overruled in part on other grounds, Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App.2000).

■ In possession of controlled substance cases, two evidentiary requirements must be met: first, the State must prove the defendant exercised actual care, control and management over the contraband; and second, that he had knowledge that the substance in his possession was contraband. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995)(citing *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App. 1988)). To establish criminal liability as a party, the State must prove that the defendant acted with the intent to promote or assist the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in the commission of the offense. TEX. PEN. CODE ANN. § 7.02(a)(2) (Vernon 1994). The mere presence of the accused at a place where contraband is located does not make him a party to joint possession, even if he knows of the contraband's existence. *Oaks v.*

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

*State,* 642 S.W.2d 174, 177 (Tex.Crim.App. 1982).

Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Travis v. State,* 638 S.W.2d 502, 503 (Tex.Crim.App.1982). When an accused is not in exclusive possession and control of the place where contraband is found, it cannot be concluded he had knowledge or control over the contraband unless there are additional independent facts and circumstances that affirmatively link him to the contraband. *Brown v. State,* 911 S.W.2d 744, 748 (Tex. Crim.App.1995); *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Sandoval v. State,* 946 S.W.2d 472, 476 (Tex.App.-Corpus Christi 1997, no pet.). Similarly, when the contraband is not found on the accused's person or it is not in the exclusive possession of the accused, additional facts and circumstances must link the accused to the contraband. *Menchaca v. State,* 901 S.W.2d 640, 651 (Tex.App.-El Paso 1995, pet. ref'd); *Musick v. State,* 862 S.W.2d 794, 804 (Tex.App.-El Paso 1993, pet. ref'd).

The affirmative links doctrine is the appropriate means of applying the *Jackson* rationality standard of review. *Martinets v. State,* 884 S.W.2d 185, 188 (Tex.App.-Austin 1994, no pet.). The Court of Criminal Appeals explained this doctrine in *Brown v. State,* 911 S.W.2d 744 (Tex.Crim.App.1995):

> [U]nder our law, an accused must not only have exercised actual care, control,

or custody of the substance, but must also have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly. Under our precedents, it does not really matter whether this evidence is direct or circumstantial. In either case it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called "affirmative links" rule.

*Id.,* at 747. After discussing the interplay between *Geesa* and *Brown,* the Beaumont Court of Appeals explained: "In accordance with *Jackson,* therefore, the strength of the 'affirmative links' must be sufficient that a rational trier of fact could find beyond a reasonable doubt that [the defendant] exercised actual care, custody, control or management over the contraband." *Dixon v. State,* 918 S.W.2d 678, 679 (Tex.App.-Beaumont 1996, no pet.).

Over the years, a nonexclusive list of factors has been developed to determine whether the evidence is sufficient to affirmatively link the accused with the controlled substance:

1. Whether the contraband was in plain view or recovered from an enclosed place;[2]

2. The accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found;

3. The accused was found with a large amount of cash;

---

2. When the narcotics are secreted, the State must address whether the defendant knew of the existence of the secret place and its contents. *Vargas v. State,* 883 S.W.2d 256, 263 (Tex.App.-Corpus Christi 1994, pet. ref'd).

4. The contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting;

5. The contraband was found in close proximity to the accused;

6. A strong residual odor of the contraband was present;

7. The accused possessed other contraband when arrested;

8. Paraphernalia to use the contraband was in view, or found on the accused;

9. The physical condition of the accused indicated recent consumption of the contraband in question;

10. Conduct by the accused indicated a consciousness of guilt;

11. The accused attempted to escape or flee;

12. The accused made furtive gestures;

13. The accused had a special connection to the contraband;

14. The occupants of the premises gave conflicting statements about relevant matters;

15. The accused made incriminating statements connecting himself to the contraband;

16. The quantity of the contraband; and,

17. The accused was observed in a suspicious area under suspicious circumstances.

*Carvajal v. State*, 529 S.W.2d 517, 520 (Tex.Crim.App.1975); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); *Mohmed v. State*, 977 S.W.2d 624, 627 (Tex.App.-Fort Worth 1998, pet. ref'd); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex.App.-Corpus Christi 1997, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 853 (Tex.App.-Tyler 1996, no pet.); *Dixon*, 918 S.W.2d at 681; *Washington v.*

*State*, 902 S.W.2d 649, 652 (Tex.App.-Houston [14th Dist] 1995, pet. ref'd); *Watson v. State*, 861 S.W.2d 410, 414–15 (Tex. App.-Beaumont 1993, pet. ref'd).

The number of the factors is not as important as the logical force the factors have in establishing the elements of the offense. *Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd); *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). While affirmative links may be proved by circumstantial evidence, proof amounting to a strong suspicion or even a probability will not suffice. *Grant v. State*, 989 S.W.2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Dubry v. State*, 582 S.W.2d 841, 844 (Tex. Crim.App. [Panel Op.] 1979)). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case by case basis. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet. ref'd).

## II. The Facts.

This case is somewhat confusing due to the number of individuals involved and their respective roles in this prosecution. Therefore, we will set forth the record evidence with considerable detail.

On the afternoon of May 20, 2000, Sergeant Douglas Phillips was working as a drug interdiction officer with the Polk County Sheriff's Department. While patrolling Highway 59, Phillips saw a Geo automobile following a rental car. This aroused Phillips' suspicion because rental cars are frequently used in the transportation of narcotics.[3] Additionally, Phillips

---

3. Phillips explained that the rental cars are used either to transport the drugs to prevent

thought it strange that two males were in the lead vehicle and two females in the trailing vehicle.[4] Phillips followed the Geo for four to five miles and initiated a stop when he observed a traffic violation. As the Geo pulled to the side of the highway, Phillips radioed Lieutenant Brandon Lovell and asked him to stop the rental car.

Phillips asked the driver of the Geo to step to the rear of the vehicle where she identified herself as Tynesha Page. Phillips testified that Page, who seemed overly nervous for a routine traffic stop, stated she was coming from Houston and going to San Augustine. Page denied following the rental car. Phillips questioned the passenger, later identified as Latosha Dewalt, who stated she was coming from Houston but did not know the destination as she was only along for the ride.[5] Phillips testified that Dewalt was "extremely nervous" and asked for permission to urinate on the side of the roadway. Phillips found this request to be highly unusual.[6] Phillips further testified that other information given by Page and Shelley was in conflict.

Page gave her consent for Phillips to search the vehicle. When Dewalt exited the vehicle, Phillips found a marijuana blunt on the front passenger seat.[7] In the console, Phillips found an index card with a telephone number written on it. Phillips found a screwdriver in the backseat. In the hatchback area of the Geo, Phillips found a speaker box which is a common place to hide drugs. Phillips used the screwdriver to remove the back of the speaker. Inside, he found a blue Wal-Mart bag.[8] Inside that bag was a Ziploc bag which contained several smaller bags which, in turn, contained the contraband alleged in the indictment.[9] Upon making this discovery, Phillips arrested Page and Dewalt, and transported them to the Polk County jail.

As noted earlier, as the Geo pulled to the side of the road, Phillips radioed Lieutenant Brandon Lovell, and asked that he stop the rental car. Lovell spotted the rental vehicle traveling 50 to 55 miles per hour in a 70 miles an hour zone. Lovell followed the vehicle for two miles and stopped it after observing a traffic violation. In Lovell's eleven years of experience, he had made numerous stops of vehicles working in tandem. Lovell explained that rental cars were once frequently used to transport narcotics. However, the *modus operandi* had changed and rental cars were now frequently used as decoys and followed by the vehicle actually carrying the contraband. *See* n. 3, *supra.* The rental car was driven by Lawendell Williams; appellant was the only passenger in the vehicle.

Following the stop, Lovell asked Williams to step to the rear of the rental car; Lovell testified Williams was nervous,

---

personal vehicles from being subject to forfeiture, or as decoys to gain the attention of narcotics officers while the drugs are being transported in non-rented vehicles.

4. Phillips explained his thought process by stating: "If I was going on a trip, I would have, you know, my girlfriend or my wife with me, you know; and it just seemed a little strange."

5. Dewalt was initially identified as Jamila M. Shelley.

6. On cross-examination, Phillips admitted that Dewalt stated she was pregnant and her pregnancy could have caused the need to urinate.

7. Phillips described a blunt as a normal cigar with the tobacco removed from the outer wrapper which is then filled with marijuana.

8. State's Exhibit 3-P.

9. The Ziploc bag was State's Exhibit 3-O, and the smaller bags contained in the Ziploc bag were State's Exhibits 3-A through 3-M.

and stated he was traveling from Houston en route to Lufkin to visit his family. Lovell determined the automobile was rented to Williams. According to Lovell, Williams denied that the Geo was following his vehicle.[10] Lovell then proceeded to question appellant, who said they were being followed by the Geo and he gave Lovell the names of the Geo driver and passenger.[11] Appellant further stated they were en route to San Augustine. Lovell described appellant as cooperative but nervous. Upon learning from Phillips that contraband had been found in the speaker box, Lovell arrested Williams and appellant, and transported them to the Polk County jail. During his arrest, appellant stated several times that he knew nothing of the contraband discovered in the Geo, and forcefully asserted his innocence. While at the station, Phillips dialed the telephone number on the index card and Lovell answered the telephone recovered from Williams.

All four suspects were fingerprinted. Jimmy Chilcutt, a latent fingerprint examiner with the Conroe Police Department, examined the items found in the speaker box by Phillips. On the blue Wal–Mart bag, Chilcutt found six latent prints; he identified two of the prints as having been made by appellant. The prints were made by appellant's right index finger and right thumb. Chilcutt could not assign a date to the prints and stated the prints could have been on the bag for as long as a year. Chilcutt further testified the prints could

have been left regardless of whether the bag was empty or full, or whether it contained the Ziploc bag. He was unable to identify the person(s) who made the remaining four prints.

Chilcutt was able to obtain a partial latent print from the Ziploc bag, but was unable to identify the source of that print, and testified he could not identify the print as appellant's. Finally, Chilcutt was unable to recover any prints on the smaller plastic packages found in the Ziploc bag which actually contained the contraband.

Dottie Collins, a chemist with the Texas Department of Public Safety, analyzed the alleged contraband and determined it to be 249.90 grams of cocaine including adulterants and dilutants. Lovell testified that amount of cocaine was possessed for purposes of distribution and had a value of approximately $25,000.00.

### III. Analysis

■ We will consider the affirmative link factors enumerated above in light of the facts developed at trial to determine whether the evidence is sufficient to establish appellant's possession of the cocaine, either as a principal or a party to the charged offenses.[12] The cocaine was not in plain view; instead, it was secreted in a speaker box in the hatchback of an automobile not occupied by appellant. There is no evidence that appellant ever exercised any ownership or control over the vehicle, and there is no evidence that ap-

---

**10.** On the video tape of the stop, Lovell asked Williams if he was traveling alone and Williams responded, "Yeah."

**11.** On the video, Lovell asked appellant:
Q. Were you all traveling with somebody?
A. No.
Q. Who is the people in the car behind you?
A. My girlfriend.
Q. Yeah. Are they your girlfriends?
A. Yeah.

**12.** The trial court's charge to the jury authorized conviction under either theory, and the jury returned a general verdict. Therefore, we must determine if the evidence is sufficient to support a finding of guilt under either theory. If so, the verdict will be upheld. *Rabbani v. State,* 847 S.W.2d 555, 558 (Tex. Crim.App.1992); *Fuller v. State,* 827 S.W.2d 919, 931 (Tex.Crim.App.1992).

pellant knew of the existence of the speaker box in the hatchback area of the Geo. *Vargas v. State*, 883 S.W.2d 256, 263 (Tex. App.-Corpus Christi 1994, pet. ref'd). The same is true for the rental vehicle; Williams was both the driver and the person who had rented the vehicle.

The contraband was neither in close proximity to appellant, nor conveniently accessible to him, but rather in the Geo which was traveling approximately one-fourth of a mile behind the rental car. There is no evidence of appellant being present or near the Geo prior to Phillips' search. There was no evidence of a strong residual odor of cocaine. No contraband or paraphernalia was found on appellant.[13] Moreover, appellant was not intoxicated and his physical condition did not indicate recent consumption of cocaine.

 While Lovell testified appellant was nervous, he was also cooperative. Excessive nervous behavior and unsettled demeanor may be examples of consciousness of guilt. *Leyva v. State*, 840 S.W.2d 757, 760 (Tex.App.—El Paso 1992, pet. ref'd) (after vehicle stopped defendant became "increasingly nervous."). The courts have recognized, however, that nervousness is a tenuous link to the contraband because most people are somewhat nervous when confronted by a police officer. *Hernandez v. State*, 867 S.W.2d 900, 905 (Tex.App.-Texarkana 1993, no pet.) (citing *Glass v. State*, 681 S.W.2d 599, 602 (Tex.Crim.App. 1984)) ("We believe that in this day and

time that when a citizen is suddenly facing an imminent confrontation with police officers for unknown reasons, most citizens with nothing to hide will nevertheless manifest an understandable nervousness in the presence of the officer."). Therefore, we do not find that appellant's conduct indicates a consciousness of guilt.

Appellant did not make any furtive gestures or attempt to flee. Appellant did not make any incriminating statements connecting himself to the contraband. To the contrary, appellant repeatedly and forcefully protested his innocence and lack of knowledge of the cocaine. Appellant was traveling as a passenger in a vehicle on a state highway on a Saturday afternoon. This was neither a suspicious location nor can appellant's presence in a vehicle on a public thoroughfare be considered a suspicious circumstance.[14]

 We next consider whether the occupants of the two vehicles gave conflicting statements about relevant matters. All four individuals stated they were traveling from Houston. Page and appellant stated they were en route to San Augustine, Williams said he was en route to Lufkin, and Dewalt was unsure of her destination as she was merely along for the ride. Additionally, Page and Williams both stated the Geo was not following the rental car, but appellant stated the two vehicles were traveling in tandem and that the females in the Geo were girlfriends. Lovell determined from his limited investi-

---

**13.** At one point, Lovell testified that he searched the rental vehicle and discovered a small amount of marijuana. However, he later testified that Williams stated he had thrown the marijuana away. Lovell then stated the canine alerted to the smell of marijuana, and Lovell testified to smelling it also, but no contraband was found in the rental vehicle. More important to our analysis, this odor, if any, was in no way related to the cocaine alleged in the indictment.

**14.** We are mindful that the rental vehicle was traveling slower than the posted speed limit. But this has little or no probative value because precedent is clear that driving at a slow speed does not give rise to reasonable suspicion. *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim.App.1992).

gation that Williams was lying and appellant was telling the truth. The conflicting or untruthful statements of others cannot serve as an affirmative link when the accused made truthful statements. Therefore, the statements made by Page, Dewalt and Williams will not serve to affirmatively link appellant to the contraband.

There was testimony that the cocaine was valued at $25,000.00 and possessed for distribution rather than personal consumption. However, there is no testimony that appellant possessed a large amount of cash. And appellant was not armed, nor were any weapons recovered from either the rental vehicle or the Geo.

■ We now turn to the question of whether a special connection between appellant and the contraband existed. To answer this, we must address the presence of appellant's finger prints on the Wal–Mart bag. Without question appellant touched this bag with his right index finger and thumb. However, there were four other prints on the bag, and Chilcutt was unable to identify the person(s) who made the remaining four prints. Additionally, Chilcutt could not assign a date as to when any of the prints were left on the bag. Appellant's prints could have been on the bag since as early as May, 1999. Additionally, there was no requirement that the bag contain anything, much less the contraband, when the prints were made.

Furthermore, Chilcutt obtained a partial latent print from the Ziploc bag. Although he was unable to identify the source of that print, Chilcutt testified he could not identify the print as appellant's. Finally, Chilcutt was unable to recover any prints on the smaller plastic packages found in the Ziploc bag which actually contained the contraband. Therefore, the issue is whether appellant's fingerprints on the Wal–Mart bag which contained a Ziploc bag which contained several smaller bags which contained the actual contraband is sufficient to establish a special relationship between appellant and the contraband.

Our independent research has not produced any case on point. That research, however, does reveal three scenarios where fingerprints have been discussed in relation to the affirmative links doctrine. First, in the vast majority of cases, law enforcement officials simply did not attempt to recover fingerprints. In the second scenario the defendant's fingerprints were found on the wrapping which contained the contraband. For example, in *Wallace v. State*, 932 S.W.2d 519, 522 (Tex. App.-Tyler 1995, pet. ref'd), the defendant was the driver of a vehicle which had two sacks of cocaine in plain view. The defendant's fingerprints were found on one of the sacks. The *Wallace* Court held this was the most significant factor in proving appellant knowingly possessed the contraband. *Id.* at 525; *see also, Castiblanco–Gomez v. State*, 882 S.W.2d 564, 566 (Tex. App.-Houston [1st Dist.] 1994, pet ref'd) ("Appellant's left index fingerprint was on the package of cocaine."); *Mann v. State*, 850 S.W.2d 740, 742 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd) ("Appellant['s] ... fingerprints were on the cocaine."); *Hayden v. State*, 753 S.W.2d 461, 462 (Tex. App.-Beaumont 1988, no pet.) (Two fingerprints of appellant found on flask filled with boiling liquid and connected to other apparatuses in manner consistent with the manufacture of a controlled substance.).

In the third scenario, fingerprints were involved in the case but not recovered from the primary container holding the contraband. In *Tatum v. State*, 836 S.W.2d 323 (Tex.App.-Austin 1992, pet. ref'd), police officers were summoned to an abandoned house. *Id.* Upon their arrival, the defendant climbed through a broken window and fled. *Id.* He was later

stopped and a syringe of cocaine was found nearby. *Id.* at 324. The police entered the house and found several items related to drug usage. *Id.* One of the items was a jar bearing the defendant's fingerprints filled with water. *Id.* An officer familiar with drug consumption testified that water was often used to convert cocaine into an injectable form. *Id.* The officers did not examine the syringe for fingerprints. *Id.* On appeal, appellant contended the evidence was insufficient to affirmatively link him to the cocaine in the syringe. The State responded that the defendant's "fingerprints were on the jar, which may have been used in preparation of the cocaine solution." *Id.* at 325. The *Tatum* Court ultimately held the evidence was insufficient. *Id.* at 327.

When discussing the jar, the Court found it significant that the "the jar itself was not contraband" and that the defendant could have been "holding the jar for a legal, legitimate purpose." *Id.* at 326. While we recognize the *Tatum* Court utilized the now abandoned outstanding reasonable hypothesis construct of appellate review, these same observations may be made of the Wal–Mart bag in the instant case. Clearly, the Wal–Mart bag is not itself contraband, and such bags are used by literally thousands of Texans on a daily basis for legitimate purposes. The undisputed testimony is that appellant could have made those prints up to a year before the date of the alleged offense, and he could have done so when the bag was empty. Moreover, the fact that there were four other prints on the bag which did not belong to appellant conclusively proves that someone other than appellant handled the Wal–Mart bag. And the fact that there was a fingerprint on the Ziploc bag that was not appellant's conclusively proves that someone other than appellant

handled that bag. Therefore, we cannot say the presence of appellant's fingerprints on a secondary container establishes a special connection between appellant and the contraband. This is the type of evidence that may amount "to a strong suspicion or even a probability" but "will not suffice." *Grant,* 989 S.W.2d at 433.

Our law is firmly established that to be sufficient, evidence in possession cases must amount to more than mere conjecture. *Dickey v. State,* 693 S.W.2d 386, 389 (Tex.Crim.App.1984). Stated another way, "possession means more than being where the action is, it involves the exercise of dominion and control over the thing allegedly possessed." *Oaks,* 642 S.W.2d at 177 (and cases cited therein); *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). In the instant case, to find the evidence sufficient would require sheer conjecture as to when and under what circumstances appellant left his fingerprints on the Wal–Mart bag.

When the affirmative link factors are viewed in the light most favorable to the prosecution, we hold the evidence is insufficient to establish appellant possessed the contraband alone. Moreover, when the evidence is viewed in that same light, we hold the evidence is insufficient to prove appellant had the intent to promote or assist the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in the commission of the offense. The evidence does not link appellant to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. Accordingly, we sustain the first point of error.[15]

The judgment of the trial court is reversed. A judgment of acquittal shall be

---

**15.** We need not address the remaining three points of error. *See* TEX. R. APP. P. 47.1.

entered in this cause. TEX. R. APP. P. 43.2(c); *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).