NUMBER
13-01-587-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                      CORPUS CHRISTI B EDINBURG


 

JOSEPH
NATHAN LASSAINT,                                                Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.

 

 

        On appeal from the
411th District Court of Polk County, Texas.

 

                                   O P I N I O N

 

                       Before Justices Dorsey,
Yañez and Baird[1]

                                   Opinion
by Justice Baird    








Appellant was
charged by indictment with the offense of possession with the intent to deliver
more than 200 but less than 400 grams of cocaine.  The indictment also alleged a prior felony
conviction for the purpose of enhancing the range of punishment.  A jury convicted appellant of the charged
offense.  Appellant pled true to the
enhancement allegation, the trial judge assessed punishment at twenty years
confinement and a fine of $1,000.  Appellant
raises four points of error contending the evidence is insufficient to support
the jury=s verdict.  We sustain the first point and reverse the
judgment of the trial court.

I.  Standard of Appellate Review

In determining
whether the evidence is legally sufficient to sustain a conviction, we employ
the standard of Jackson v. Virginia and ask Awhether, after
viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.@  Jackson v. Virgina,
443 U.S. 307, 319 (1979).  The
standard is applicable to both direct and circumstantial evidence cases.  Geesa v. State, 820 S.W.2d 154, 158
(Tex. Crim. App. 1991), overruled in part on other grounds, Paulson v. State,
28 S.W.3d 570, 573 (Tex. Crim. App. 2000).








In possession
of controlled substance cases, two evidentiary requirements must be met:  first, the State must prove the defendant
exercised actual care, control and management over the contraband; and second,
that he had knowledge that the substance in his possession was contraband.  King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App.1995)(citing Martin v. State, 753
S.W.2d 384, 387 (Tex. Crim. App.1988)). 
To establish criminal liability as a party, the State must prove that
the defendant acted with the intent to promote or assist the offense by
soliciting, encouraging, directing, aiding, or attempting to aid the other
person in the commission of the offense. 
Tex. Pen.
Code Ann. ' 7.02(a)(2) (Vernon 1994). 
The mere presence of the accused at a place where contraband is located
does not make him a party to joint possession, even if he knows of the
contraband's existence.  Oaks v. State, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982).

Whether the
theory of prosecution is sole or joint possession, the evidence must
affirmatively link the accused to the contraband in such a manner and to such
an extent that a reasonable inference may arise that the accused knew of the
contraband's existence and that he exercised control over it.  Travis v. State, 638
S.W.2d 502, 503 (Tex. Crim. App. 1982).  When an accused is not in exclusive possession
and control of the place where contraband is found, it cannot be concluded he
had knowledge or control over the contraband unless there are additional
independent facts and circumstances that affirmatively link him to the
contraband. Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); Cude
v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986); Sandoval v. State,
946 S.W.2d 472, 476 (Tex. App.BCorpus Christi
1997, no pet.).  Similarly, when the
contraband is not found on the accused's person or it is not in the exclusive
possession of the accused, additional facts and circumstances must link the
accused to the contraband.  Menchaca
v. State, 901 S.W.2d 640, 651 (Tex. App.BEl Paso 1995,
pet. ref'd); Musick v. State, 862 S.W.2d 794, 804 (Tex. App.BEl Paso 1993,
pet. ref'd).








The affirmative
links doctrine is the appropriate means of applying the Jackson
rationality standard of review.  Martinets
v. State, 884 S.W.2d 185, 188 (Tex. App.BAustin 1994, no
pet.).  The Court of Criminal Appeals
explained this doctrine in Brown v. State, 911 S.W.2d 744 (Tex. Crim.
App. 1995):

[U]nder our
law, an accused must not only have exercised actual care, control, or custody
of the substance, but must also have been conscious of his connection with it
and have known what it was, evidence which affirmatively links him to it
suffices for proof that he possessed it knowingly.  Under our precedents, it does not really matter
whether this evidence is direct or circumstantial.  In either case it must establish, to the
requisite level of confidence, that the accused's connection with the drug was
more than just fortuitous.  This is the whole
of the so-called Aaffirmative
links@ rule.

 

Id., at 747.  After discussing the interplay between Geesa
and Brown, the Beaumont Court of Appeals explained: AIn accordance
with Jackson, therefore, the strength of the >affirmative
links= must be
sufficient that a rational trier of fact could find beyond a reasonable doubt
that [the defendant] exercised actual care, custody, control or management over
the contraband.@  Dixon v. State, 918 S.W.2d 678, 679
(Tex. App.BBeaumont 1996,
no pet.).

Over the years,
a nonexclusive list of factors has been developed to determine whether the
evidence is sufficient to affirmatively link the accused with the controlled
substance:

1. Whether the
contraband was in plain view or recovered from an enclosed place;[2]

 

2. The accused
was the owner of the premises or had the right to possess the place where the
contraband was found, or was the owner or driver of the automobile in which the
contraband was found;

 

3. The accused
was found with a large amount of cash;








4. The
contraband was conveniently accessible to the accused, or found on the same
side of the vehicle as the accused was sitting;

 

5. The
contraband was found in close proximity to the accused;

 

6. A strong
residual odor of the contraband was present;

 

7. The accused
possessed other contraband when arrested; 

 

8.
Paraphernalia to use the contraband was in view, or found on the accused;

 

9. The physical
condition of the accused indicated recent consumption of the contraband in
question;

 

10. Conduct by
the accused indicated a consciousness of guilt;

 

11. The accused
attempted to escape or flee;

 

12. The accused
made furtive gestures;

 

13. The accused
had a special connection to the contraband;

 

14. The
occupants of the premises gave conflicting statements about relevant matters;

 

15. The accused
made incriminating statements connecting himself to
the contraband;

 

16. The
quantity of the contraband; and,

 

17. The accused
was observed in a suspicious area under suspicious circumstances.

 








Carvajal v.
State,
529 S.W.2d 517, 520 (Tex. Crim. App. 1975); State v. Derrow, 981 S.W.2d
776, 779 (Tex. App.BHouston [1st
Dist.] 1998, pet. ref'd); Mohmed v. State, 977 S.W.2d 624, 627 (Tex.
App.BFort Worth
1998, pet. ref'd); Cantu v. State, 944 S.W.2d 669, 670 (Tex. App.BCorpus Christi
1997, pet. ref'd); Ortiz v. State, 930 S.W.2d 849, 853 (Tex. App.BTyler 1996, no
pet.); Dixon, 918 S.W.2d at 681; Washington v. State, 902 S.W.2d
649, 652 (Tex. App.BHouston [14th
Dist] 1995, pet. ref=d); Watson
v. State, 861 S.W.2d 410, 414‑15 (Tex. App.BBeaumont 1993,
pet. ref'd).

The number of
the factors is not as important as the logical force the factors have in
establishing the elements of the offense. 
Jones v. State, 963 S.W.2d 826, 830 (Tex. App.BTexarkana 1998,
pet. ref'd); Hurtado v. State, 881 S.W.2d 738, 743 (Tex. App.BHouston [1st
Dist.] 1994, pet. ref'd); Gilbert v. State, 874 S.W.2d 290, 298 (Tex.
App.BHouston [1st
Dist.] 1994, pet. ref'd).  While
affirmative links may be proved by circumstantial evidence, proof amounting to
a strong suspicion or even a probability will not suffice.  Grant v. State, 989 S.W.2d 428, 433
(Tex. App.BHouston [14th
Dist.] 1999, no pet.) (citing Dubry v. State,
582 S.W.2d 841, 844 (Tex. Crim. App. [Panel Op.] 1979)).  Ultimately, the question of whether the
evidence is sufficient to affirmatively link the accused to the contraband must
be answered on a case by case basis.  Whitworth
v. State, 808 S.W.2d 566, 569 (Tex. App.BAustin 1991,
pet. ref'd).

II.  The Facts.

This case is
somewhat confusing due to the number of individuals involved and their
respective roles in this prosecution. 
Therefore, we will set forth the record evidence with considerable
detail.








On the
afternoon of May 20, 2000, Sergeant Douglas Phillips was working as a drug
interdiction officer with the Polk County Sheriff=s Department.  While patrolling Highway 59, Phillips saw a
Geo automobile following a rental car. 
This aroused Phillips= suspicion
because rental cars are frequently used in the transportation of narcotics.[3]  Additionally, Phillips thought it strange
that two males were in the lead vehicle and two females in the trailing
vehicle.[4]  Phillips followed the Geo for four to five
miles and initiated a stop when he observed a traffic violation.  As the Geo pulled to the side of the highway,
Phillips radioed Lieutenant Brandon Lovell and asked him to stop the rental
car.

Phillips asked
the driver of the Geo to step to the rear of the vehicle where she identified
herself as Tynesha Page.  Phillips
testified that Page, who seemed overly nervous for a routine traffic stop,
stated she was coming from Houston and going to San Augustine.  Page denied following the rental car.  Phillips questioned the passenger, later
identified as Latosha Dewalt, who stated she was coming from Houston but did
not know the destination as she was only along for the ride.[5]  Phillips testified that Dewalt was Aextremely
nervous@ and asked for
permission to urinate on the side of the roadway.  Phillips found this request to be highly
unusual.[6]  Phillips further testified that other
information given by Page and Shelley was in conflict.








Page gave her
consent for Phillips to search the vehicle. 
When Dewalt exited the vehicle, Phillips found a
marijuana blunt on the front passenger seat.[7]  In the console, Phillips found an index card
with a telephone number written on it. 
Phillips found a screwdriver in the backseat.  In the hatchback area of the Geo, Phillips
found a speaker box which is a common place to hide drugs.  Phillips used the screwdriver to remove the
back of the speaker.  Inside, he found a
blue Wal-Mart bag.[8]  Inside that bag was a Ziploc bag which
contained several smaller bags which, in turn, contained the contraband alleged
in the indictment.[9]  Upon making this discovery, Phillips arrested
Page and Dewalt, and transported them to the Polk County jail.

As noted
earlier, as the Geo pulled to the side of the road, Phillips radioed Lieutenant
Brandon Lovell, and asked that he stop the rental car.  Lovell spotted the rental vehicle traveling 50
to 55 miles per hour in a 70 miles an hour zone.  Lovell followed the vehicle for two miles and
stopped it after observing a traffic violation. 
In Lovell=s eleven years of
experience, he had made numerous stops of vehicles working in tandem.  Lovell explained that rental cars were once
frequently used to transport narcotics. 
However, the modus operandi had changed and rental cars were now
frequently used as decoys and followed by the vehicle actually carrying the
contraband.  See n.3, supra.  The rental car was driven by Lawendell
Williams; appellant was the only passenger in the vehicle.








Following the
stop, Lovell asked Williams to step to the rear of the rental car; Lovell
testified Williams was nervous, and stated he was traveling from Houston en
route to Lufkin to visit his family. 
Lovell determined the automobile was rented to Williams.  According to Lovell, Williams denied that the
Geo was following his vehicle.[10]  Lovell then proceeded to question appellant,
who said they were being followed by the Geo and he gave Lovell the names of
the Geo driver and passenger.[11]
Appellant further stated they were en route to San Augustine.  Lovell described appellant as cooperative but
nervous.  Upon learning from Phillips
that contraband had been found in the speaker box, Lovell arrested Williams and
appellant, and transported them to the Polk County jail.  During his arrest, appellant stated several
times that he knew nothing of the contraband discovered in the Geo, and
forcefully asserted his innocence.  While
at the station, Phillips dialed the telephone number on the index card and
Lovell answered the telephone recovered from Williams.








All four
suspects were fingerprinted.  Jimmy
Chilcutt, a latent fingerprint examiner with the Conroe Police Department,
examined the items found in the speaker box by Phillips.  On the blue Wal-Mart bag, Chilcutt found six
latent prints; he identified two of the prints as having been made by  appellant.  The prints were made by appellant=s right index
finger and right thumb.  Chilcutt could
not assign a date to the prints and stated the prints could have been on the
bag for as long as a year. Chilcutt further testified the prints could have
been left regardless of whether the bag was empty or full, or whether it
contained the Ziploc bag.  He was unable
to identify the person(s) who made the remaining four prints.

Chilcutt was
able to obtain a partial latent print from the Ziploc bag, but was unable to
identify the source of that print, and testified he could not identify the
print as appellant=s.  Finally, Chilcutt was unable to recover any
prints on the smaller plastic packages found in the Ziploc bag which actually
contained the contraband.

Dottie Collins,
a chemist with the Texas Department of Public Safety, analyzed the alleged
contraband and determined it to be 249.90 grams of cocaine including
adulterants and dilutants.  Lovell
testified that amount of cocaine was possessed for purposes of distribution and
had a value of approximately $25,000.00.

III.  Analysis








We will
consider the affirmative link factors enumerated above in light of the facts
developed at trial to determine whether the evidence is sufficient to establish
appellant=s possession of
the cocaine, either as a principal or a party to the charged offenses.[12]  The cocaine was not in plain view; instead,
it was secreted in a speaker box in the hatchback of an automobile not occupied
by appellant.  There is no evidence that
appellant ever exercised any ownership or control over the vehicle, and there
is no evidence that appellant knew of the existence of the speaker box in the
hatchback area of the Geo.  Vargas v.
State, 883 S.W.2d 256, 263 (Tex. App.BCorpus Christi
1994, pet. ref'd).  The same is true for
the rental vehicle; Williams was both the driver and the person who had rented
the vehicle.

The contraband
was neither in close proximity to appellant, nor conveniently accessible to
him, but rather in the Geo which was traveling approximately one-fourth of a
mile behind the rental car.  There is no
evidence of appellant being present or near the Geo prior to Phillips= search.  There was no evidence of a strong residual
odor of cocaine.  No contraband or
paraphernalia was found on appellant.[13]  Moreover, appellant was not intoxicated and
his physical condition did not indicate recent consumption of cocaine.








While Lovell
testified appellant was nervous, he was also cooperative.  Excessive nervous behavior and unsettled
demeanor may be examples of consciousness of guilt.  Leyva v. State, 840 S.W.2d 757, 760
(Tex. App.B‑El Paso
1992, pet. ref'd) (after vehicle stopped defendant became Aincreasingly
nervous.@). The courts
have recognized, however, that nervousness is a tenuous link to the contraband
because most people are somewhat nervous when confronted by a police
officer.  Hernandez v. State, 867
S.W.2d 900, 905 (Tex. App.BTexarkana 1993,
no pet.) (citing Glass v. State, 681 S.W.2d 599, 602 (Tex. Crim. App.
1984) (AWe believe that
in this day and time that when a citizen is suddenly facing an imminent
confrontation with police officers for unknown reasons, most citizens with
nothing to hide will nevertheless manifest an understandable nervousness in the
presence of the officer.@).  Therefore, we do not find that appellant=s conduct
indicates a consciousness of guilt.

Appellant did
not make any furtive gestures or attempt to flee.  Appellant did not make any incriminating
statements connecting himself to the contraband.  To the contrary, appellant repeatedly and
forcefully protested his innocence and lack of knowledge of the cocaine.  Appellant was traveling as a passenger in a
vehicle on a state highway on a Saturday afternoon.  This was neither a suspicious location nor
can appellant=s presence in a
vehicle on a public thoroughfare be considered a suspicious circumstance.[14]








We next
consider whether the occupants of the two vehicles gave conflicting statements
about relevant matters.  All four
individuals stated they were traveling from Houston.  Page and appellant stated they were en route
to San Augustine, Williams said he was en route to Lufkin, and Dewalt was
unsure of her destination as she was merely along for the ride.  Additionally, Page and Williams both stated
the Geo was not following the rental car, but appellant stated the two vehicles
were traveling in tandem and that the females in the Geo were girlfriends.  Lovell determined from his limited
investigation that Williams was lying and appellant was telling the truth.  The conflicting or untruthful statements of
others cannot serve as an affirmative link when the accused made truthful
statements.  Therefore, the statements
made by Page, Dewalt and Williams will not serve to affirmatively link
appellant to the contraband.

There was
testimony that the cocaine was valued at $25,000.00 and possessed for
distribution rather than personal consumption. 
However, there is no testimony that appellant possessed a large amount
of cash.  And appellant was not armed,
nor were any weapons recovered from either the rental vehicle or the Geo.

We now turn to
the question of whether a special connection between appellant and the
contraband existed.  To answer this, we
must address the presence of appellant=s finger prints
on the Wal-Mart bag.  Without question
appellant touched this bag with his right index finger and thumb.  However, there were four other prints on the
bag, and Chilcutt was unable to identify the person(s) who made the remaining
four prints.  Additionally, Chilcutt
could not assign a date as to when any of the prints were left on the bag.  Appellant=s prints could have been on the bag since
as early as May, 1999.  Additionally,
there was no requirement that the bag contain anything, much less the
contraband, when the prints were made.








Furthermore,
Chilcutt obtained a partial latent print from the Ziploc bag. Although he was
unable to identify the source of that print, Chilcutt testified he could not
identify the print as appellant=s.  Finally, Chilcutt was unable to recover any
prints on the smaller plastic packages found in the Ziploc bag which actually
contained the contraband.  Therefore, the
issue is whether appellant=s fingerprints
on the Wal-Mart bag which contained a Ziploc bag which contained several
smaller bags which contained the actual contraband is sufficient to establish a
special relationship between appellant and the contraband.

Our independent
research has not produced any case on point. 
That research, however, does reveal three scenarios where fingerprints
have been discussed in relation to the affirmative links doctrine.  First, in the vast majority of cases, law
enforcement officials simply did not attempt to recover fingerprints.  In the second scenario the defendant=s fingerprints
were found on the wrapping which contained the contraband.  For example, in Wallace v. State, 932
S.W.2d 519, 522 (Tex. App.BTyler 1995,
pet. ref'd), the defendant was the driver of a vehicle which had two sacks of
cocaine in plain view.  The defendant=s fingerprints
were found on one of the sacks.  The Wallace
Court held this was the most significant factor in proving appellant knowingly
possessed the contraband.  Id. at
525; see also, Castiblanco‑Gomez v. State, 882 S.W.2d 564, 566
(Tex. App.BHouston [1st
Dist.] 1994, pet ref'd) (AAppellant's
left index fingerprint was on the package of cocaine.@); Mann v.
State, 850 S.W.2d 740, 742 (Tex. App.BHouston [14th
Dist.] 1993, pet. ref'd) (AAppellant[>s] . . .
fingerprints were on the cocaine.@); Hayden v.
State, 753 S.W.2d 461, 462 (Tex. App.BBeaumont 1988,
no pet.) (Two fingerprints of appellant found on flask filled with boiling
liquid and connected to other apparatuses in manner consistent with the
manufacture of a controlled substance.).








In the third
scenario, fingerprints were involved in the case but not recovered from the
primary container holding the contraband. 
In Tatum v. State, 836 S.W.2d 323 (Tex. App.BAustin 1992,
pet. ref'd), police officers were summoned to an abandoned house.  Id. 
Upon their arrival, the defendant climbed through a broken window and
fled.  Id.  He was later stopped and a syringe of cocaine
was found nearby.  Id.
at 324.  The police entered the
house and found several items related to drug usage.  Id. 
One of the items was a jar bearing the defendant=s fingerprints
filled with water.  Id.  An officer familiar with drug consumption
testified that water was often used to convert cocaine into an injectable
form.  Id.  The officers did not examine the syringe for
fingerprints.  Id.  On appeal, appellant contended the evidence
was insufficient to affirmatively link him to the cocaine in the syringe.  The State responded that the defendant=s Afingerprints
were on the jar, which may have been used in preparation of the cocaine
solution.@  Id. at 325.  The Tatum Court ultimately held the
evidence was insufficient.  Id. at 327.








When discussing
the jar, the Court found it significant that the Athe jar itself was not contraband@ and that the
defendant could have been Aholding the jar
for a legal, legitimate purpose.@  Id. at 326.  While we recognize the Tatum Court
utilized the now abandoned outstanding reasonable hypothesis construct of
appellate review, these same observations may be made of the Wal-Mart bag in
the instant case. Clearly, the Wal-Mart bag is not itself contraband,
and such bags are used by literally thousands of Texans on a daily basis for
legitimate purposes.  The undisputed
testimony is that appellant could have made those prints up to a year before
the date of the alleged offense, and he could have done so when the bag was
empty. Moreover, the fact that there were four other prints on the bag which
did not belong to appellant conclusively proves that someone other than
appellant handled the Wal-Mart bag.  And
the fact that there was a fingerprint on the Ziploc bag that was not appellant=s conclusively
proves that someone other than appellant handled that bag. Therefore, we cannot
say the presence of appellant=s fingerprints
on a secondary container establishes a special connection between appellant and
the contraband.  This is the type of
evidence that may amount Ato a strong
suspicion or even a probability@ but Awill not
suffice.@  Grant, 989 S.W.2d at
433.

Our law is
firmly established that to be sufficient, evidence in possession cases must
amount to more than mere conjecture.  Dickey v. State, 693 S.W.2d 386, 389 (Tex. Crim. App. 1984).  Stated another way, Apossession
means more than being where the action is, it involves the exercise of dominion
and control over the thing allegedly possessed.@  Oaks, 642 S.W.2d at 177 (and cases cited therein); McGoldrick
v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).  In the instant case, to find the evidence
sufficient would require sheer conjecture as to when and under what
circumstances appellant left his fingerprints on the Wal-Mart bag.








When the
affirmative link factors are viewed in the light most favorable to the
prosecution, we hold the evidence is insufficient to establish appellant
possessed the contraband alone. 
Moreover, when the evidence is viewed in that same light, we hold the
evidence is insufficient to prove appellant had the intent to promote or assist
the offense by soliciting, encouraging, directing, aiding, or attempting to aid
the other person in the commission of the offense.  The evidence does not link appellant to the
contraband in such a manner and to such an extent that a reasonable inference
may arise that the accused knew of the contraband's existence and that he
exercised control over it.  Accordingly,
we sustain the first point of error.[15]

The judgment of
the trial court is reversed.  A judgment
of acquittal shall be entered in this cause. 
Tex. R. App. P. 43.2(c); Burks v. United States, 437 U.S.
1, 18 (1978); Greene v. Massey, 437 U.S. 19, 24 (1978).

 

 

 

                                                   


CHARLES F.
BAIRD

Justice

 

 

Publish.  

Tex. R. App. P. 47.3.

 

Opinion
delivered and filed this the

13th
day of June, 2002.

 











[1]
Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court
by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. ' 74.003 (Vernon 1998).





[2] When
the narcotics are secreted, the State must address whether the defendant knew
of the existence of the secret place and its contents. Vargas v. State,
883 S.W.2d 256, 263 (Tex. App.BCorpus
Christi 1994, pet. ref'd).





[3]
Phillips explained that the rental cars are used either to transport the drugs
to prevent personal vehicles from being subject to forfeiture, or as decoys to
gain the attention of narcotics officers while the drugs are being transported
in non-rented vehicles.





[4]
Phillips explained his thought process by stating: AIf
I was going on a trip, I would have, you know, my girlfriend or my wife with
me, you know; and it just seemed a little strange.@





[5]
Dewalt was initially identified as Jamila M. Shelley.





[6]
On cross-examination, Phillips admitted that Dewalt stated she was pregnant and
her pregnancy could have caused the need to urinate.





[7]
Phillips described a blunt as a normal cigar with the tobacco removed from the
outer wrapper which is then filled with marijuana.





[8]
State=s Exhibit 3-P.





[9]
The Ziploc bag was State=s Exhibit 3-O,
and the smaller bags contained in the Ziploc bag were State=s
Exhibits 3-A through 3-M.





[10]
On the video tape of the stop, Lovell asked Williams if he was traveling alone
and Williams responded, AYeah.@





[11]
On the video, Lovell asked appellant:

Q.  Were you all traveling with somebody?

A.  No.

Q.  Who is the people in
the car behind you?

A.  My girlfriend.

Q.  Yeah. 
Are they your girlfriends?

A.  Yeah.





[12] The
trial court=s
charge to the jury authorized conviction under either theory,
and the jury returned a general verdict. 
Therefore, we must determine if the evidence is sufficient to support a
finding of guilt under either theory.  If
so, the verdict will be upheld.  Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App.
1992); Fuller v. State, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992).





[13]
At one point, Lovell testified that he searched the rental vehicle and
discovered a small amount of marijuana. 
However, he later testified that Williams stated he had thrown the
marijuana away.  Lovell then stated the
canine alerted to the smell of marijuana, and Lovell testified to smelling it
also, but no contraband was found in the rental vehicle.  More important to our analysis, this odor, if
any, was in no way related to the cocaine alleged in the indictment.





[14]
We are mindful that the rental vehicle was traveling slower than the posted speed
limit.  But this has little or no
probative value because precedent is clear that driving at a slow speed does
not give rise to reasonable suspicion.  Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992).

 





[15] We
need not address the remaining three points of error.  See Tex.
R. App. P. 47.1.