SURMAN V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-295-CR

LATOYA RAMELLE SURMAN APPELLANT

A/K/A LATOYA R. SURMAN 

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Latoya Ramelle Surman a/k/a Latoya R. Surman appeals from a jury’s verdict finding her guilty of aggravated robbery while using a deadly weapon, a firearm, and assessing her punishment at fourteen years’ confinement.  In her sole point on appeal, Appellant challenges the factual sufficiency of the evidence to support her conviction.  We affirm.

BACKGROUND

As will be set out in more detail in this opinion, on the evening of July 21, 2002, Appellant was a customer at a Sonic Drive-In located in Fort Worth, a restaurant where a customer drives their car up to a stall and places an order by way of a speaker, and a car-hop brings the food order to the customer’s car.  As Appellant was being served her order by a car-hop, a man robbed the car-hop and left in the car being driven by Appellant.  The car-hop and the manager of the restaurant both testified at trial, as did the man who admitted robbing the car-hop with Appellant and another witness to whom Appellant admitted having participated in the robbery.  Appellant gave investigating officers two written statements; in her first statement she denied being anywhere near the scene of the robbery, and in her second statement she admitted being there with the man who robbed the car-hop but denied having any knowledge that her companion intended to commit the robbery.

The jury charge included an instruction that if the evidence so warranted, the jury could find Appellant guilty as a party to the offense of aggravated robbery with a deadly weapon.  In her sole issue on appeal, Appellant contends the evidence established that she was merely present at the scene of the robbery and this is factually insufficient to establish she acted as a party.

STANDARD OF REVIEW

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Although the outstanding or alternative reasonable hypothesis theory is not applicable to a legal sufficiency review, the existence of alternative reasonable hypotheses may be relevant to, but not determinative in, a factual sufficiency review.  
Wilson v. State
, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).

THE APPLICABLE LAW

Section 29.02 of the Texas Penal Code defines robbery as follows:

(a)  A person commits an offense if, in the course of committing theft . . . and with the intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code Ann.
 § 29.02(a)(1), (2) (Vernon 2003).  The robbery becomes aggravated if the perpetrator uses or exhibits a deadly weapon.  
Id
. § 29.03(a)(2).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  
Id
. 
§ 7.01(a).  Furthermore, a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  
Id
. § 7.02(a)(2).

Evidence is sufficient to support a conviction under the law of parties when the actor is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement.  
Burdine v. State
, 
719 S.W.2d 309, 315 (Tex. Crim. App. 1986), 
cert. denied
, 480 U.S. 940 (1987).  
The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose.  
Id.
  In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and it may rely on actions of the defendant that show an understanding and common design to commit the offense.  
Id.

DISCUSSION

Erica Johnson was working as a car-hop at the Sonic Drive-In on Seminary Drive in Fort Worth, Texas on July 21, 2002.  A car-hop at Sonic is given a wallet to hold her paper money during her shift, a coin changer, and an apron; the wallet is kept in the apron, and the coin changer is attached to the apron.  At 10:30 p.m. on the evening of the robbery, Johnson delivered a food order to a car that was parked in a stall near the back of the building.  The car was a white, two-door vehicle with tinted windows.  At trial, Johnson identified Appellant as the driver of the vehicle.
(footnote: 2)  As Johnson held the tray and passed the drinks through the window of Appellant’s car, a man came out from behind the Sonic building.  He put a little silver handgun up to Johnson’s head, said, “Bitch, give me your money,” and instructed Johnson not to turn around.  Johnson testified that she was in fear for her life at this point.  The man took Johnson’s wallet out of her apron pocket and threw it inside the car.

As this was occurring, Appellant took the food and the tray that it was on and put everything inside her car.  She did tell the man not to shoot, but she did not act nervous.  After the man threw Johnson’s wallet into the car, Appellant and the man both wrestled for Johnson’s coin changer, and Appellant reached out of the car to assist the man in getting the coin changer off of Johnson’s belt and apron; Appellant threw it into the car.  The man then ran behind the car and got into the passenger’s side.  They left together; Appellant was driving and sped off very fast.

Johnson acknowledged that Appellant did not have a weapon or do anything to frighten her.  Johnson stated that she had seen Appellant before, perhaps at the Sonic Drive-In or around the neighborhood.

Chad Porchia testified that on July 21, 2002, he lived with Appellant at the home of Janice Porter.  Porchia was sixteen years old and had known Appellant for three or four years.  Porchia testified that neither he nor Appellant had a job, and Appellant owed money on a car note.  She talked with him about planning the robbery of the Sonic so she could pay her car note.  Porchia stated that the robbery was Appellant’s idea and her plan was that they would drive to Sonic and order food, and Porchia was to come from behind the trash can or Sonic building and take away the car-hop’s money.  Porchia testified that this is exactly what they did on the evening of July 21, 2002.  He came up behind the car-hop, Erica Johnson, with a .25 automatic handgun (silver with a black handle) and pointed it at Johnson, telling her to freeze and to give him what she had.  He took her wallet where the bills were and threw it into the car. Appellant reached out of the car to get Johnson’s coin changer when Porchia dropped it.  After his arrest in the instant case, Porchia was adjudicated delinquent for aggravated robbery arising out of this transaction, and at the time of Appellant’s trial, Porchia was incarcerated in a juvenile detention facility.

Janice Porter testified that on July 21, 2002, Appellant and Porchia lived with her.  She considered Porchia to be her godson, and she believed that Porchia was Appellant’s boyfriend.  She testified that on that date Porchia was sixteen years old and Appellant was twenty-eight years old.  Porter had given her 2002 white two-door Mitsubishi Mirage automobile to Appellant, who was going to assume the payments on it.  On July 21, 2002, Appellant and Porchia came home and Appellant handed her $148, which was wet.  They also had “a chain thing that they used that go around the waist when you work at Sonic’s and [Appellant] put it in the trash.”  Porchia told Porter that they had “robbed Sonic.”  Appellant bragged about the robbery and gave Porter the details; she told her she had sent Porchia around the Sonic building so he could put a gun to the head of the car-hop, and they followed through with their plan and put the gun to the car-hop’s head and took her money.

When Appellant and Porchia left the house, Porter called 9-1-1 and told the police what she knew about the robbery of Sonic.  Later that evening she gave the police the coin changer that Appellant and Porchia had brought home and thrown into the trash.  Porter acknowledged that although she initiated the call to the police and went down to the police station at their request, she was subsequently uncooperative with the police and refused to sign a written statement.  She explained that she did not think the police acted fairly by arresting Porchia on the night that Porter called the police but not arresting Appellant until a month later.  It was her opinion that if Porchia and Appellant had both committed the crime, they should both be arrested, but the police had not arrested Appellant.  Porter believed that because Appellant was so much older than Porchia, she was “masterminding” him and he would do anything she told him to do.

Appellant did not testify at trial, but her two written statements to the police were admitted into evidence and read in their entirety to the jury.  In her first statement, Appellant said she had loaned her car to Porchia on the evening of the robbery, and she denied knowing anything about the robbery.  In her second statement given 4.25 hours later, Appellant admitted that she and Porchia went to Sonic on the evening of the robbery.  However, she stated that as she was ordering food, Porchia got out of the car, and she thought he “was rolling a blunt.”
(footnote: 3)  When the car-hop delivered the food, Porchia came up from behind Appellant’s car and pointed a gun at the girl, shouting, “Bitch, give me everything.”  Appellant was confused, really scared, and didn’t understand what Porchia was doing.  Porchia pointed the gun at Appellant and said, “Bitch, you drive.”  Appellant was so scared she wet herself and drove off, leaving Porchia at the Sonic.  She drove down the street and turned around to head home but then stopped to ask Porchia what he had just done.  Porchia got into the car, and Appellant drove back to Porter’s house.  Porchia told Porter about the robbery, but when Porter confronted Appellant with the news, Appellant told her she was not involved.  Lastly, Appellant said that Porter was mad at Appellant, who owed her money for the car and insurance, and she always favored Porchia because he reminds Porter of her dead son.

In her brief, Appellant points to the discrepancy between Johnson’s testimony that Porchia got into Appellant’s car and they sped off together and  Appellant’s second written statement, which states that she initially left Porchia behind when she drove away from Sonic because she was so upset by his actions.  The manager of the Sonic, Brande Keys, testified that on the evening of the robbery she watched Johnson run into the Sonic building in a panic at the same time that a white sedan sped out of the Sonic parking lot.  Johnson ran in saying she had been robbed, and when Keys looked at the white car, she saw the shadows of two people inside the car.  Keys’ testimony bolsters Johnson’s statement that Appellant and Porchia left together in Appellant’s car after the robbery.  Nonetheless, the jury heard this potentially conflicting evidence, and in our factual sufficiency review of the jury’s verdict we give due deference to the jury verdict as well as to determinations involving the credibility and demeanor of witnesses.  
See Zuniga
, 144 S.W.3d at 481.

Having thoroughly reviewed all the evidence, we conclude the evidence is factually sufficient to support Appellant’s conviction as a party to the offense of aggravated robbery with a deadly weapon.  In examining the events that occurred before, during, and after the commission of the offense, we conclude that Appellant’s actions established that she encouraged the commission of the offense either by words or other agreement, and her actions show an understanding and common design to rob the car-hop at the Sonic Drive-In.  Although in her second written statement Appellant admits being present during the robbery but denies any involvement in planning or assisting Porchia in the robbery, the evidence from other witnesses clearly establishes Appellant’s involvement as a party.  Johnson testified that Appellant helped Porchia take the money changer off Johnson’s belt and that Appellant immediately sped off in her car with Porchia and the proceeds of the robbery.  Porchia testified that he and Appellant planned the robbery in advance.  Porter testified that Appellant bragged about committing the offense and gave her the money and coin changer from the robbery.  We hold that a rational jury could have found Appellant guilty beyond a reasonable doubt as a party to the offense of aggravated robbery with a deadly weapon.  We overrule Appellant’s sole point on appeal.

CONCLUSION

Having found the evidence factually sufficient to support the jury’s verdict, we affirm the judgment of the trial court.

PER CURIAM

PANEL F:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 14, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Johnson also identified Appellant as the driver of the vehicle when the police showed her a six-person photo spread after the robbery.

3:
A blunt is a hollowed-out cigar filled with marijuana.  
Jackson v. State
, 94 S.W.3d 46, 47 (Tex. App.—Tyler 2002, pet. ref’d); 
Lassaint v. State
, 79 S.W.3d 736, 742 n.7 (Tex. App.—Corpus Christi 2002, no pet.).