COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH 
NO. 
2-03-295-CR   
LATOYA RAMELLE 
SURMAN                                                  APPELLANT
A/K/A LATOYA R. SURMAN  
V.  
THE STATE OF 
TEXAS                                                                  STATE   

------------ 
FROM THE 213TH DISTRICT COURT OF TARRANT 
COUNTY 
------------ 
MEMORANDUM OPINION[1] 
------------
        Appellant 
Latoya Ramelle Surman a/k/a Latoya R. Surman appeals from a jury’s verdict 
finding her guilty of aggravated robbery while using a deadly weapon, a firearm, 
and assessing her punishment at fourteen years’ confinement. In her sole point 
on appeal, Appellant challenges the factual sufficiency of the evidence to 
support her conviction. We affirm.
BACKGROUND
        As 
will be set out in more detail in this opinion, on the evening of July 21, 2002, 
Appellant was a customer at a Sonic Drive-In located in Fort Worth, a restaurant 
where a customer drives their car up to a stall and places an order by way of a 
speaker, and a car-hop brings the food order to the customer’s car. As Appellant 
was being served her order by a car-hop, a man robbed the car-hop and left in 
the car being driven by Appellant. The car-hop and the manager of the restaurant 
both testified at trial, as did the man who admitted robbing the car-hop with 
Appellant and another witness to whom Appellant admitted having participated in 
the robbery. Appellant gave investigating officers two written statements; in 
her first statement she denied being anywhere near the scene of the robbery, and 
in her second statement she admitted being there with the man who robbed the 
car-hop but denied having any knowledge that her companion intended to commit 
the robbery.
        The 
jury charge included an instruction that if the evidence so warranted, the jury 
could find Appellant guilty as a party to the offense of aggravated robbery with 
a deadly weapon. In her sole issue on appeal, Appellant contends the evidence 
established that she was merely present at the scene of the robbery and this is 
factually insufficient to establish she acted as a party.
STANDARD OF 
REVIEW
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. at 484-85. “This standard acknowledges that evidence of guilt 
can ‘preponderate’ in favor of conviction but still be insufficient to prove the 
elements of the crime beyond a reasonable doubt.” Id. at 485. In other 
words, evidence supporting a guilty finding can outweigh the contrary proof but 
still be insufficient to prove the elements of an offense beyond a reasonable 
doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility and 
demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 404, 
407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of the 
fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. 
Id. at 484, 486-87. An opinion addressing factual sufficiency must 
include a discussion of the most important and relevant evidence that supports 
the appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003). Although the outstanding or alternative reasonable 
hypothesis theory is not applicable to a legal sufficiency review, the existence 
of alternative reasonable hypotheses may be relevant to, but not determinative 
in, a factual sufficiency review. Wilson v. State, 7 S.W.3d 136, 141 
(Tex. Crim. App. 1999).
THE APPLICABLE 
LAW
        Section 
29.02 of the Texas Penal Code defines robbery as follows:
   
(a) A person commits an offense if, in the course of committing theft . . . 
and with the intent to obtain or maintain control of the property, 
he:
 
(1) intentionally, knowingly, or recklessly causes 
bodily injury to another; or
 
(2) intentionally or knowingly threatens or places 
another in fear of imminent bodily injury or death.    
 
Tex. Penal Code 
Ann. § 29.02(a)(1), (2) (Vernon 2003). The robbery becomes aggravated if 
the perpetrator uses or exhibits a deadly weapon. Id. § 
29.03(a)(2).
        A 
person is criminally responsible as a party to an offense if the offense is 
committed by his own conduct, by the conduct of another for which he is 
criminally responsible, or by both. Id. § 7.01(a). Furthermore, a person 
is criminally responsible for an offense committed by the conduct of another if, 
acting with the intent to promote or assist the commission of the offense, he 
solicits, encourages, directs, aids, or attempts to aid the other person to 
commit the offense. Id. § 7.02(a)(2).
        Evidence 
is sufficient to support a conviction under the law of parties when the actor is 
physically present at the commission of the offense and encourages the 
commission of the offense either by words or other agreement. Burdine v. 
State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), cert. denied, 480 
U.S. 940 (1987). The evidence must show that at the time of the offense the 
parties were acting together, each contributing some part towards the execution 
of their common purpose. Id. In determining whether a defendant 
participated in an offense as a party, the court may examine the events 
occurring before, during, and after the commission of the offense, and it may 
rely on actions of the defendant that show an understanding and common design to 
commit the offense. Id.
DISCUSSION
        Erica 
Johnson was working as a car-hop at the Sonic Drive-In on Seminary Drive in Fort 
Worth, Texas on July 21, 2002. A car-hop at Sonic is given a wallet to hold her 
paper money during her shift, a coin changer, and an apron; the wallet is kept 
in the apron, and the coin changer is attached to the apron. At 10:30 p.m. on 
the evening of the robbery, Johnson delivered a food order to a car that was 
parked in a stall near the back of the building. The car was a white, two-door 
vehicle with tinted windows. At trial, Johnson identified Appellant as the 
driver of the vehicle.[2]  As Johnson held 
the tray and passed the drinks through the window of Appellant’s car, a man came 
out from behind the Sonic building. He put a little silver handgun up to 
Johnson’s head, said, “Bitch, give me your money,” and instructed Johnson not to 
turn around. Johnson testified that she was in fear for her life at this point. 
The man took Johnson’s wallet out of her apron pocket and threw it inside the 
car.
        As 
this was occurring, Appellant took the food and the tray that it was on and put 
everything inside her car. She did tell the man not to shoot, but she did not 
act nervous. After the man threw Johnson’s wallet into the car, Appellant and 
the man both wrestled for Johnson’s coin changer, and Appellant reached out of 
the car to assist the man in getting the coin changer off of Johnson’s belt and 
apron; Appellant threw it into the car. The man then ran behind the car and got 
into the passenger’s side. They left together; Appellant was driving and sped 
off very fast.
        Johnson 
acknowledged that Appellant did not have a weapon or do anything to frighten 
her. Johnson stated that she had seen Appellant before, perhaps at the Sonic 
Drive-In or around the neighborhood.
        Chad 
Porchia testified that on July 21, 2002, he lived with Appellant at the home of 
Janice Porter. Porchia was sixteen years old and had known Appellant for three 
or four years. Porchia testified that neither he nor Appellant had a job, and 
Appellant owed money on a car note. She talked with him about planning the 
robbery of the Sonic so she could pay her car note. Porchia stated that the 
robbery was Appellant’s idea and her plan was that they would drive to Sonic and 
order food, and Porchia was to come from behind the trash can or Sonic building 
and take away the car-hop’s money. Porchia testified that this is exactly what 
they did on the evening of July 21, 2002. He came up behind the car-hop, Erica 
Johnson, with a .25 automatic handgun (silver with a black handle) and pointed 
it at Johnson, telling her to freeze and to give him what she had. He took her 
wallet where the bills were and threw it into the car. Appellant reached out of 
the car to get Johnson’s coin changer when Porchia dropped it. After his arrest 
in the instant case, Porchia was adjudicated delinquent for aggravated robbery 
arising out of this transaction, and at the time of Appellant’s trial, Porchia 
was incarcerated in a juvenile detention facility.
        Janice 
Porter testified that on July 21, 2002, Appellant and Porchia lived with her. 
She considered Porchia to be her godson, and she believed that Porchia was 
Appellant’s boyfriend. She testified that on that date Porchia was sixteen years 
old and Appellant was twenty-eight years old. Porter had given her 2002 white 
two-door Mitsubishi Mirage automobile to Appellant, who was going to assume the 
payments on it. On July 21, 2002, Appellant and Porchia came home and Appellant 
handed her $148, which was wet. They also had “a chain thing that they used that 
go around the waist when you work at Sonic’s and [Appellant] put it in the 
trash.” Porchia told Porter that they had “robbed Sonic.” Appellant bragged 
about the robbery and gave Porter the details; she told her she had sent Porchia 
around the Sonic building so he could put a gun to the head of the car-hop, and 
they followed through with their plan and put the gun to the car-hop’s head and 
took her money.
        When 
Appellant and Porchia left the house, Porter called 9-1-1 and told the police 
what she knew about the robbery of Sonic. Later that evening she gave the police 
the coin changer that Appellant and Porchia had brought home and thrown into the 
trash. Porter acknowledged that although she initiated the call to the police 
and went down to the police station at their request, she was subsequently 
uncooperative with the police and refused to sign a written statement. She 
explained that she did not think the police acted fairly by arresting Porchia on 
the night that Porter called the police but not arresting Appellant until a 
month later. It was her opinion that if Porchia and Appellant had both committed 
the crime, they should both be arrested, but the police had not arrested 
Appellant. Porter believed that because Appellant was so much older than 
Porchia, she was “masterminding” him and he would do anything she told him to 
do.
        Appellant 
did not testify at trial, but her two written statements to the police were 
admitted into evidence and read in their entirety to the jury. In her first 
statement, Appellant said she had loaned her car to Porchia on the evening of 
the robbery, and she denied knowing anything about the robbery. In her second 
statement given 4.25 hours later, Appellant admitted that she and Porchia went 
to Sonic on the evening of the robbery. However, she stated that as she was 
ordering food, Porchia got out of the car, and she thought he “was rolling a 
blunt.”[3]  
When the car-hop delivered the food, Porchia came up from behind Appellant’s car 
and pointed a gun at the girl, shouting, “Bitch, give me everything.” Appellant 
was confused, really scared, and didn’t understand what Porchia was doing. 
Porchia pointed the gun at Appellant and said, “Bitch, you drive.” Appellant was 
so scared she wet herself and drove off, leaving Porchia at the Sonic. She drove 
down the street and turned around to head home but then stopped to ask Porchia 
what he had just done. Porchia got into the car, and Appellant drove back to 
Porter’s house. Porchia told Porter about the robbery, but when Porter 
confronted Appellant with the news, Appellant told her she was not involved. 
Lastly, Appellant said that Porter was mad at Appellant, who owed her money for 
the car and insurance, and she always favored Porchia because he reminds Porter 
of her dead son.
        In 
her brief, Appellant points to the discrepancy between Johnson’s testimony that 
Porchia got into Appellant’s car and they sped off together and Appellant’s 
second written statement, which states that she initially left Porchia behind 
when she drove away from Sonic because she was so upset by his actions. The 
manager of the Sonic, Brande Keys, testified that on the evening of the robbery 
she watched Johnson run into the Sonic building in a panic at the same time that 
a white sedan sped out of the Sonic parking lot. Johnson ran in saying she had 
been robbed, and when Keys looked at the white car, she saw the shadows of two 
people inside the car. Keys’ testimony bolsters Johnson’s statement that 
Appellant and Porchia left together in Appellant’s car after the robbery. 
Nonetheless, the jury heard this potentially conflicting evidence, and in our 
factual sufficiency review of the jury’s verdict we give due deference to the 
jury verdict as well as to determinations involving the credibility and demeanor 
of witnesses. See Zuniga, 144 S.W.3d at 481.
        Having 
thoroughly reviewed all the evidence, we conclude the evidence is factually 
sufficient to support Appellant’s conviction as a party to the offense of 
aggravated robbery with a deadly weapon. In examining the events that occurred 
before, during, and after the commission of the offense, we conclude that 
Appellant’s actions established that she encouraged the commission of the 
offense either by words or other agreement, and her actions show an 
understanding and common design to rob the car-hop at the Sonic Drive-In. 
Although in her second written statement Appellant admits being present during 
the robbery but denies any involvement in planning or assisting Porchia in the 
robbery, the evidence from other witnesses clearly establishes Appellant’s 
involvement as a party. Johnson testified that Appellant helped Porchia take the 
money changer off Johnson’s belt and that Appellant immediately sped off in her 
car with Porchia and the proceeds of the robbery. Porchia testified that he and 
Appellant planned the robbery in advance. Porter testified that Appellant 
bragged about committing the offense and gave her the money and coin changer 
from the robbery. We hold that a rational jury could have found Appellant guilty 
beyond a reasonable doubt as a party to the offense of aggravated robbery with a 
deadly weapon. We overrule Appellant’s sole point on appeal.
CONCLUSION
        Having 
found the evidence factually sufficient to support the jury’s verdict, we affirm 
the judgment of the trial court.
     
                                                                  PER 
CURIAM   
PANEL F: HOLMAN, DAUPHINOT, and GARDNER, 
JJ. 
DO NOT PUBLISH 
Tex. R. App. 
P. 47.2(b) 
DELIVERED: April 14, 2005


 
NOTES
1. See Tex. R. App. 
P. 47.4.
2. Johnson also identified Appellant as the driver of the vehicle 
when the police showed her a six-person photo spread after the 
robbery.
3. A blunt is a hollowed-out cigar filled with marijuana. Jackson 
v. State, 94 S.W.3d 46, 47 (Tex. App.—Tyler 2002, pet. ref’d); Lassaint 
v. State, 79 S.W.3d 736, 742 n.7 (Tex. App.—Corpus Christi 2002, no 
pet.).