**Opinion issued September 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-13-00303-CR

————————————

**THOMAS FORD BLAND, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1279983**

---

## MEMORANDUM OPINION

A trial court convicted appellant Thomas Ford Bland of murder and sentenced him to 50 years in prison. *See* TEX. PENAL CODE ANN. § 19.02 (West 2011). In one issue on appeal, Bland argues that the evidence was legally insufficient to support his conviction.

We affirm.

## Background

Appellant Thomas Ford Bland and his girlfriend, Courtney Mosely, were at the Redondo apartments in Baytown late at night. Mosely was acquainted with sisters Jennifer and Bonnie Paddy, who also lived at the Redondo apartments. Mosely borrowed Jennifer Paddy's mobile phone. At 11:21 p.m., while Mosely had the phone, a call was placed from it to a drug dealer named Irad Mixon, the complainant in this case. Mixon's end of the conversation was overheard by his girlfriend, who testified that the caller was a woman. A drug transaction was arranged on the call, to take place between the Redondo apartments and the neighboring Trestles apartment complex. The two apartment communities were separated by a grassy field often used as a footpath by residents and a fence with a hole that was used as a passageway.

A surveillance video shows Bland and Mosely walking in the direction of the Trestles at approximately 11:29 p.m. Three additional phone calls were made from Jennifer's phone to Mixon's phone—two at 11:36 p.m. and one at 11:40 p.m. Then at 11:43 p.m., a call was placed from Mixon's phone to Jennifer's phone. Around this time, a property manager who lived at the Redondo apartments heard gunshots. Three minutes later, the same surveillance video shows Bland running

through the field, returning in the direction from which he came. The video also shows Mosely following about one minute behind him.

Desmond Wilson, Mixon's cousin, encountered Bland and Mosely running toward the Redondo apartments from the direction of the Trestles just before midnight. He testified that Mosely said something that made him run toward the Trestles in search of Mixon. Minutes later, Wilson found Mixon dead on the ground at the Trestles, with multiple gunshot wounds. At 11:49 p.m., the police received a phone call about a shooting. According to phone logs admitted at trial, one final call was placed from Jennifer's phone to Mixon's at 11:51 p.m.

Back at the Redondo apartment complex, Bland and Mosely went to the Paddy sisters' apartment. Only Bonnie Paddy was home, and Bland said that he had something for her sister, showing her a revolver tucked into his pants. Bland placed the gun in a shoebox, and he made a phone call, during which he was twice heard saying, "That's a done deal at this time." Bonnie Paddy described Bland's behavior as "very odd" and "strange." She said that both Bland and Mosely were sweaty, and Mosely was also nervous and jittery. After a brief period of time, Bland and Mosely left the apartment with the shoebox.

No shell casings were recovered near Mixon's body, and at trial two police officers—a crime scene investigator and a detective—testified that the absence of shell casings was consistent with gunshots fired from a revolver or the shell

3

casings having been collected or lost in the grass. Based on the lack of casings, the detective said the murder weapon "would probably be a revolver." A medical examiner testified that Mixon had five bullet wounds, including three fatal shots to his head and chest.

In the days after the shooting, Bland made two recorded statements to the police. The first was made before Bland was identified as a suspect. By the time he gave the second statement, he had been identified as a suspect, and a police officer informed him of his *Miranda* rights prior to the second statement. Bland denied any involvement in the crime, denied ever having been in the area, and asserted that the surveillance video did not actually show him at the crime scene.

Bland was charged with murder, and he waived his right to a jury trial. The case was tried to the court. Bland did not testify at trial, but both of his recorded statements were admitted into evidence, along with the surveillance videos. The trial court found Bland guilty and assessed punishment at 50 years in prison. Bland appeals.

**Analysis**

In a single issue, Bland argues that the evidence presented at the bench trial was legally insufficient to support his conviction. Specifically, he argues that there was no evidence he was ever at the Trestles, where Mixon was shot. Instead, he contends the evidence only showed him on the footpath between the apartment

4

complexes. Further, he contends that there was no evidence that Mixon was shot with a revolver as opposed to a semiautomatic gun, or that the gun he brought to the Paddy sisters' apartment was in any way connected to the crime. Finally, he asserts that there was no evidence of any connection between himself and Mixon and that he had no motive to commit the offense.

We review the legal sufficiency of the evidence by viewing it in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The trier of fact is the sole judge of the weight and credibility of the evidence. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). "We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact." *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd); *see Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Our standard of review is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Circumstantial evidence is as probative as direct evidence in establishing the guilt

of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A reviewing court must consider the combined and cumulative force of the evidence rather than analyze individual pieces of evidence in isolation. *Temple v. State*, 214 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex. Crim. App. 2007).

Caselaw has established that certain kinds of circumstantial evidence may support an inference of guilt if combined with other buttressing evidence, even though each piece of evidence considered in isolation may be insufficient to establish guilt. For example, a defendant's flight from or presence at the scene of a crime may support an inference of guilt. *See Devoe v. State,* 354 S.W.3d 457, 470 (Tex. Crim. App. 2011) (flight); *Johnson v. State*, 537 S.W.2d 16, 18 (Tex. Crim. App. 1976) (presence). In addition, excessive nervous behavior and an unsettled demeanor may demonstrate consciousness of guilt. *Lassaint v. State*, 79 S.W.3d 736, 744 (Tex. App.—Corpus Christi 2002, no pet.); *Leyva v. State*, 840 S.W.2d 757, 760–61 (Tex. App.—El Paso 1992, pet. ref'd).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). The evidence in this case shows that just before midnight and before the shooting, a call was placed from Jennifer Paddy's phone to Mixon's phone. The evidence that the

6

phone from which the call originated was loaned to Mosely supports an inference that Mosely placed the call. This is further supported by testimony from Mixon's girlfriend that she overheard the conversation and heard a woman's voice. The evidence showed that Mixon arranged to meet the caller for a drug deal between the Redondo and Trestles apartment complexes. Surveillance video establishes that Bland and Mosely approached the Trestles just before the shooting and that they ran back toward the Redondo apartments just after the shooting. The apartment manager testified that the shooting occurred just before midnight, which is consistent with the timeline established by the phone records.

Wilson encountered Bland and Mosely when they were running back toward the Redondo apartments. Something mentioned by Mosely caused Wilson to hasten to the Trestles where he found Mixon had been shot to death.

No shell casings were found at the crime scene, indicating that the weapon may have been a revolver. Just after the shooting, Bland displayed a revolver and behaved in an unusual manner. Mosely was observed to be nervous and jittery. Bland was twice heard to tell someone, "That's a done deal at this time," before departing with the revolver. The phrase "it's a done deal" has been noted in other cases to support an inference of a defendant's consciousness of guilt or as an indication of intent to commit murder. *See Grigsby v. State*, No. 13-10-00650-CR, 2012 WL 2861670, at *2 n.2 (Tex. App.—Corpus Christi July 12, 2012, pet. ref'd,

7

untimely filed) (co-conspirator called appellant after murder to tell her it was "a done deal"); *Cooley v. State*, No. 01-07-01016-CR, 2009 WL 566466, at *3 (Tex. App.—Houston [1st Dist.] Mar. 5, 2009, pet. ref'd) (same); *Sears v. State*, No. 08-01-00011-CR, 2002 WL 1732592, at *3 (Tex. App.—El Paso July 25, 2002, no pet.) (same).

Bland argues that this evidence is nevertheless insufficient to show that he murdered Mixon. First, he argues that there is no direct evidence that he was ever on the grounds of the Trestles. In his recorded police interviews, he denied ever having been to the Trestles. But he was seen walking toward the Trestles just before the shooting and running from the Trestles just afterward. Moreover, the detective testified without objection that Bland "was being deceptive the entire interview because we had witnesses [who] could put him at certain places, which he wouldn't even admit to that." Resolving conflicts in the evidence and determining the credibility of the witnesses are tasks uniquely entrusted to the finder of fact. *See Lancon*, 253 S.W.3d at 707; *Dewberry*, 4 S.W.3d at 740. The record here could support a factfinder's determination that Bland was not entirely truthful in his police interview and could support a finding that based on circumstantial evidence he was, in fact, at the Trestles at the time of the shooting.

Second, Bland disputes his identification as the man seen on the surveillance video. To support this contention, he relies on testimony from Wilson, who

initially told police officers that he did not know the name of the man he saw running through the field that night. At trial, Wilson testified that he saw Bland and Mosely running toward the Redondo apartments from the Trestles just before he found Mixon dead, and he identified Bland in open court. To the extent that cross-examination revealed discrepancies in his testimony, the court as trier of fact was empowered to resolve the conflicting evidence. *See Dewberry*, 4 S.W.3d at 740. In this instance, the evidence supports a conclusion that Wilson encountered Bland as he walked toward the Trestles after the shooting.

Bland makes two other arguments regarding the identification of the man seen on the surveillance video. He argues that the evidence is insufficient because the apartment manager testified that he had previously met Bland, but he could not identify the people in the surveillance video. Bland criticizes the State for not taking the opportunity to have the apartment manager watch the video in court and make a comparison to identify the man in the surveillance video. He also makes a similar argument about the State's failure to elicit an in-court comparison from the detective who identified him from the surveillance video after first seeing a photograph of him. However, the trial court had the opportunity to observe Bland and to view the video, which enabled the judge to make the comparison that Bland argues the State should have elicited from the witnesses.

Third, Bland challenges the sufficiency of the evidence pertaining to the murder weapon. He argues that the State's case fails because the murder weapon was never found, because there was no evidence that the gun he displayed at the Paddy sisters' apartment was used in the crime, and because the State did not disprove the possibility that a semiautomatic weapon could have been used to commit this crime. Bonnie Paddy testified that the gun Bland brought to her apartment was "definitely" a revolver, and the crime scene investigator and the detective testified that the lack of shell casings was consistent with the use of a revolver. Bland's theory that a semiautomatic handgun was used would be consistent with the evidence only if the shell casings were removed by someone other than the police or lost in the grass. But the evidence showed that Wilson found Mixon within minutes of the shooting, the police were immediately called, and they promptly responded and began to investigate. This evidence could support an inference by a reasonable factfinder that too little time had elapsed between the shooting and the police response for anyone else to have removed the spent shell casings.

Finally, Bland argues that the State failed to prove that he was in any way connected to Mixon or had any motive to kill him. Circumstantial evidence suggested that Bland was with Mosely when she made several calls to Mixon to set up a drug deal. Moreover, because motive is not an element of murder, *see*

*Clayton*, 235 S.W.3d at 781, the State's failure to prove a motive does not render the evidence legally insufficient to support the conviction.

Having considered each of Bland's arguments pertaining to the sufficiency of the evidence, and having reviewed all of the evidence in the light most favorable to the trial court's verdict, we conclude that based on the combined and cumulative force of the evidence, a rational factfinder could have found beyond a reasonable doubt that Bland committed murder. We overrule Bland's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11