

NUMBER 13-12-00512-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE REYNA,                                                                   Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

On appeal from the 28th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant, Jose Reyna, was convicted for possession of a controlled substance, a

second-degree felony, and sentenced to ten years in the Texas Department of Criminal

Justice—Institutional Division.   *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D),

481.115(a) (West Supp. 2011).   In one issue, Reyna argues that there was insufficient

evidence to support that the controlled substance was ever in his "possession." We affirm.

## I. BACKGROUND

On February 20, 2012, Officer Robert Walker of the Corpus Christi Police Department observed a vehicle driving without its headlights on at approximately 3:00 a.m. Officer Walker flashed his lights and pulled the vehicle over. As he approached the vehicle, he "observed both passenger and driver reaching towards the center console area, leaning down, making furtive movements." Mindful of his safety, Officer Walker immediately called for a back-up unit because he was not sure if the occupants were reaching for a weapon. Officer Walker then approached the driver's side window and asked for identification and proof of insurance. He used his flashlight to scan the front and backseats for weapons. The driver, Moises Munguia, replied that his driver's license had been stolen but provided proof of insurance for the vehicle. Officer Walker also requested proof of identify from the passenger, Reyna. Reyna presented a Texas identification card.

Soon, Officer Mario Olivarez, Officer Walker's back-up, arrived. At that point, Officer Walker asked Munguia to step out of the vehicle. Officer Walker scanned the driver's side floorboard and seat again, noted nothing of concern, and escorted Munguia back to his patrol car to run a background check. During this time, Officer Olivarez approached the vehicle. He testified that Reyna, still seated in the passenger seat, made "an odd movement like he threw something down and brought it back really quick, to his waist area, his left hand" as soon as Officer Walker and Munguia left the vehicle. Officer Olivarez, having reached the vehicle, then asked Reyna to open his palm to see if

2

he was holding anything. Reyna was not. Officer Olivarez then pulled Reyna out of the vehicle, performed a pat down search on him, and escorted Reyna to his patrol car. When Officer Olivarez returned to the vehicle, he noticed that there was cash on the passenger seat, and a "baggie with a white powder substance" on the driver's side floorboard. Officer Olivarez called Officer Walker over to the vehicle to report his findings. Officer Walker observed that the baggie had not been on the floorboard earlier, when he removed the driver from the car.

The officers called a third officer to perform a drug field test. Once it was confirmed that the white powder was a controlled substance, the baggie was collected, the vehicle was impounded, and Munguia and Reyna were both taken into custody. At trial, Officer Olivarez testified that the total amount of cash seized from the arrest was a little over $1,225, comprised of mainly twenty and one-hundred dollar bills.

During his case-in-chief, Reyna called his sister, Jean Ybarra, to the stand to testify in his defense. Ybarra stated that the vehicle and drugs were hers, and that she wanted to take responsibility because "you don't let nobody else go down for it" if you personally committed the crime. The weight of Ybarra's testimony was limited, though, because she stated that she was intoxicated on the night in question and "passed out" early in the evening. Ybarra also admitted that she had a prior history of felonies, including theft and possession of controlled substances.

Reyna was convicted for possession of a controlled substance, a second-degree felony, and sentenced to ten years in the Texas Department of Criminal Justice—Institutional Division. This appeal followed.

3

## II. APPLICABLE LAW AND STANDARD OF REVIEW

The *Jackson v. Virginia* legal-sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We thus apply the *Jackson* standard to our review and inquire whether "considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt" in this case. *Brooks*, 323 S.W.3d at 899. In our analysis, we are required to "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight given to their testimony." *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).

"Sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc); *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

Here, to prove possession of a controlled substance, the State had to prove that Reyna (1) had actual care, control, or custody of the controlled substance, and (2) was conscious of his connection with it and knew what it was. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a).

4

"When a defendant is not in exclusive possession of the place where the controlled substance is found, the State must prove additional independent facts and circumstances that affirmatively link the defendant to the contraband in such a way that it can be concluded that the defendant had knowledge of the contraband and exercised control over it." *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Here, because the drugs were not found in Reyna's actual possession, we look to the "affirmative links" doctrine to determine whether there were sufficient connections linking Reyna to the drugs. *See Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.). We consider the following list of nonexclusive factors in determining whether an accused is linked to the contraband involved in the case. *Id.* The factors include whether:

1. The contraband was in plain view or recovered from an enclosed place;

2. The accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found;

3. The accused was found with a large amount of cash;

4. The contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting;

5. The contraband was found in close proximity to the accused;

6. A strong residual odor of the contraband was present;

7. The accused possessed other contraband when arrested;

8. Paraphernalia to use the contraband was in view, or found on the accused;

9. The physical condition of the accused indicated recent consumption of the contraband in question;

5

10. Conduct by the accused indicated a consciousness of guilt;

11. The accused attempted to escape or flee;

12. The accused made furtive gestures;

13. The accused had a special connection to the contraband;

14. The occupants of the premises gave conflicting statements about relevant matters;

15. The accused made incriminating statements connecting himself to the contraband;

16. The quantity of the contraband;

17. The accused was observed in a suspicious area under suspicious circumstances;

18. The defendant's familiarity or previous experience with drugs; and

19. Any forensic evidence that connects the defendant to the contraband or its container.

*Id*.; *see Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "It is not the number of affirmative links present that is important, but rather the 'logical force' that they create to prove that the defendant committed the crime." *Nhem*, 129 S.W.3d at 699.

### III. ANALYSIS

Reyna, in his sole issue, argues that there was legally insufficient evidence to establish that the baggie of cocaine found in the vehicle was in his possession. He asserts that there were "no fingerprints on the [baggie], no drugs found on his person, [and] no drug paraphernalia in the vehicle." He also complains that he did not own the vehicle, was not under the influence of narcotics when he was arrested, and that the drugs were not found where he was sitting.

6

However, the "logical force" of the evidence shows that the jury was rationally justified in finding that Reyna possessed the baggie of cocaine beyond a reasonable doubt. *Nhem*, 129 S.W.3d at 699; *Brooks*, 323 S.W.3d at 899. First, Officer Walker "observed both passenger and driver reaching towards the center console area, leaning down, making furtive movements." *See Lassaint*, 79 S.W.3d at 740–41 (noting that "furtive gestures" can be indicative of possession). Second, Reyna was found with a large amount of cash. *Id.* Third, the cocaine was found under "suspicious circumstances" because it was visible on the driver's side floorboard only after the driver, Munguia, was escorted from the vehicle by Officer Walker. *Id.* A reasonable jury could conclude that Reyna threw the baggie over to the driver's side when Munguia left, especially after Officer Olivarez testified that he saw Reyna's left hand make "an odd movement like he threw something down and brought it back really quick, to his waist area . . . ." Given these independent facts and circumstances, we conclude that there are enough affirmative links to establish Reyna's possession of the drugs in question. *Nhem*, 129 S.W.3d at 699;

Reyna, however, urges us to consider his sister's testimony to prove that the drugs were in her possession and not his. In this situation, we must defer to the jury and their apparent decision to disregard all of Ybarra's testimony. "The jury is the sole judge of the witnesses' credibility and the weight given to their testimony." *See* TEX. CODE CRIM. PROC. ANN. art. 38.04. Here, it is possible that the jury elected not to believe Ybarra because she was trying to save her brother from possible time in prison. The jury also could have disregarded her testimony because, by her own admission, she was so intoxicated on the night of the incident that she "passed out."

7

Considering all of the evidence in the light most favorable to the verdict, we hold that the jury was rationally justified in finding beyond a reasonable doubt that Reyna "possessed" the baggie of cocaine in question. *Brooks*, 323 S.W.3d at 899. Accordingly, we overrule his sole issue.

## IV. Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed the
18th day of April, 2013.