**AFFIRM; and Opinion Filed February 5, 2014.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00729-CR

**JEAN KENNETH TONEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 061707**

## MEMORANDUM OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

A jury convicted Jean Kenneth Toney of possession of one gram or more but less than four grams of methamphetamine, found the offense was committed in a drug-free zone, and assessed punishment of twenty years' imprisonment and a $20,000 fine. In two issues, Toney argues there is insufficient evidence to establish he intentionally or knowingly possessed the methamphetamine or that the offense was committed in a drug-free zone. We affirm the trial court's judgment. We issue this memorandum opinion because the law to be applied in this case is well settled. *See* TEX. R. APP. P. 47.4.

### Background

At approximately 4:00 p.m. on January 19, 2012, Adam Bradshaw, a deputy for the Grayson County Sheriff's Office, saw Rosabella Byrd leaving Maranda Brown's house, a known

"drug house." Byrd looked like she was waiting for somebody. Based on Byrd's "narcotics history" and the residence she had been in, Bradshaw decided "to keep an eye on her." Bradshaw passed Byrd and had made two turns when he saw Toney getting into his truck. Bradshaw was aware that Toney had a "history" in the narcotics industry.

Bradshaw passed the truck and watched Toney in the rear view and side mirrors of his car. Bradshaw saw Toney turn east and shadowed Toney on another street. Bradshaw saw Toney stop in the middle of the road in front of Byrd. Byrd got into Toney's truck. Bradshaw contacted his partner, Kevin Cheairs, about what he had seen and followed Toney's truck through the Denison area. Toney stopped briefly at another residence known for the presence of narcotics. After approximately ten minutes, Toney stopped at a stop sign at the intersection of Mirick and Texas. Toney then activated his turn signal. Bradshaw stopped Toney based on his failure to use his turn signal continuously for one hundred feet prior to the intersection. The traffic stop occurred at the intersection of Mirick and Main, an intersection which, according to Bradshaw, was within 1,000 feet of Forest Park.

When Bradshaw stopped Toney, he saw Toney moving around "more than usual" in the truck. He saw Toney swaying back and forth and his arms "going out." Bradshaw thought Toney might be hiding or destroying evidence. Bradshaw quickly got out of his car and approached the driver's side of Toney's truck. Bradshaw did not see Byrd make any movements, but believed he could have missed any movements by Byrd while he was getting out of his car. Bradshaw requested identification from both Toney and Byrd.

When Byrd handed Bradshaw her identification, Bradshaw noticed scales in the floorboard on the passenger side of the truck. Bradshaw knew that type of scale is commonly used to weigh drugs. Bradshaw asked Byrd to get out of the truck and stand by the tailgate. According to Bradshaw, Byrd was "very, very nervous" and he suspected, based on her and

Toney's histories, the residence they stopped at while he was following them, and the scales, that there were narcotics either in the truck or on Byrd. Bradshaw started questioning Byrd about what she had been doing that day. Around this time, Cheairs arrived and began talking to Toney. Byrd eventually pulled a baggie of a crystal-like substance from her pants and a smaller baggie of the same substance from her bra. Bradshaw believed the substance was methamphetamine. Based on what Byrd told him, Bradshaw arrested both Toney and Byrd for possession of methamphetamine.

Bradshaw searched Toney's truck and found a cellphone and a "dope note," a piece of paper with drug information on it such as the quantity and type of drug and the identity of the person who purchased the drug. In Byrd's purse were two cellphones, a pair of scales disguised as a cellphone, and drug paraphernalia, including baggies commonly used to package methamphetamine and glass pipes commonly used to smoke methamphetamine. Bradshaw admitted that both the baggies and the scales could be used for purposes not related to drugs. No latent fingerprints were obtained from the scales taken from the floorboard of the truck. To Bradshaw's knowledge, no other items from the truck or Byrd's purse were tested for fingerprints.

Byrd testified she pleaded guilty to possession of between one and four grams of methamphetamine and was sentenced to ten years' imprisonment. Byrd admitted that, when she pleaded guilty, the State dropped the allegation the offense occurred in a drug-free zone. She has previous convictions for theft, possession of a controlled substance, and tampering with evidence.

According to Byrd, she first met Toney in approximately November 2011. Toney was her dealer, and she also obtained "dope" for him on more than twenty occasions. When Toney had narcotics, he would "front" the drugs to Byrd and she would pay him for them later. When

Toney did not have narcotics, he would ask her to obtain them for him from someone else. She would normally get an "eight ball" for him. An eight ball weighs between 3.7 and 3.8 grams and costs $230 or $240. Byrd used digital scales to weigh the drugs she purchased.

On January 19, 2012, Byrd was at Brown's house. Toney had either called her or sent her a text message saying that he wanted her to get him "something." Toney came to the house, and she got into his truck. He gave her the money and "dropped her off" around the block. After she purchased an "eight ball" of methamphetamine, Toney picked her up and they "dropped off" someone who was with them. As they were driving down the road, a police officer pulled them over. As they were pulling over, Toney threw two sets of scales on the floorboard. He also took the "dope" out of his pocket, threw it at her, and told her to hide it. Byrd put the methamphetamine in her pants. Byrd testified that Toney moved around while he was trying to get the drugs out of his pocket and, as soon as he threw the drugs at her, she moved around trying to hide them.

Bradshaw asked her to get out of the truck. She initially did not answer when Bradshaw asked her if she had any drugs. After he said that he could get the dogs, she admitted that she did have drugs. She had two baggies containing methamphetamine, one in her bra and one in her pants. She told Bradshaw the little baggie in her bra belonged to her and the larger baggie in her pants belonged to Toney. Her scales were in her purse, and the scales in the floorboard belonged to Toney. According to Byrd, the "dope notes" also belonged to Toney.

Byrd testified she and Toney stood together by the truck after they were arrested and were transported to jail in the same car. According to Byrd, Toney repeatedly asked her to tell the police officers that the drugs were hers. He promised he would "be there for her," would get her an attorney, and would write to her. Byrd did not believe Toney's promises,

Jennifer Rumppe, a forensic scientist employed by the Texas Department of Public Safety Crime Laboratory, testified she analyzed the substance in both baggies obtained from Byrd. The larger baggie contained 3.26 grams of methamphetamine and the smaller baggie contained 0.20 grams of methamphetamine.

Byrd testified there were two cellphones in her purse. One of the phones belonged to her and she stole the other phone from Toney while she was in his truck. In her phone, Toney's phone number, (903) 327-2777, was listed under the contact "Boss Man." She labeled Toney "Boss Man" because he fronted drugs to her for which she paid him later.

Javier Soto, a deputy with the Grayson County Sheriff's department, testified that he obtained a search warrant that allowed him to investigate the information in the cellphones found in Byrd's purse and in Toney's truck. Soto was able to turn on only two of the phones. From those phones, Soto took pictures of a number of text messages between "Boss Man" and "Rosa" beginning at 1:26 p.m. on January 19, 2012.[1] In Soto's opinion, these messages confirmed Byrd's statements that one of the baggies of methamphetamine belonged to Byrd and one belonged to Toney, Byrd was purchasing narcotics for Toney, she often purchased narcotics for Toney, and on January 19, 2012, Toney wanted an "eight." Soto also confirmed from a prior investigation that, in 2010, Toney was using the same phone number as that assigned to "Boss Man" in Byrd's cellphone. William Heath, a sergeant with the Denison Police Department, testified that, on April 16, 2012, he called (903) 327-2777 on two occasions while conducting a follow-up investigation and spoke with Toney both times.[2]

Dennis Michael, an investigator for the district attorney's office, testified that he compared Toney's fingerprints to fingerprints in a federal penitentiary packet and confirmed they

---

[1] Several of these pictures were admitted into evidence.

[2] Heath did not testify about any details of this investigation.

were from the same person. The penitentiary packet showed that, on January 19, 2012, Toney was on supervised release on a federal conviction. The State then played a recording of a telephone call Toney made from jail in which Toney expressed concern that somebody needed to contact his "probation officer" and requested that property, including two cellphones, be recovered from his impounded truck.

During the guilt phase of the trial, the trial court admitted State's exhibit 2, a copy of a drug-free zone map that includes Forest Park that had been filed with the Grayson County clerk. Toney does not dispute that, based on boundaries shown on the map, the offense occurred within a drug-free zone. Bradshaw testified he knows, based on his work in the area, that Forest Park is within a drug-free zone. Bradshaw used Google Earth to measure the distance from the intersection of Mirick and Main, where the traffic stop occurred, to Forest Park and determined it was approximately 964 feet. Bradshaw also testified that, while he was following Toney, Toney was closer to Forest Park than he was at the time of the stop.

During the punishment phase of the trial, the trial court admitted State's exhibits thirty-nine through forty-three, the remaining drug-free zone maps for Denison. Jeffery Jones, a private investigator employed by Toney, testified he was asked to measure the distance from the point of the traffic stop to the Forest Park area. Using a rolling measuring tape, he measured from the center of the intersection of Mirick and Main to a slide at Forest Park, the piece of playground equipment closest to the location of the stop. The most direct route he could use measured 1,362 feet. Jones admitted the playground equipment was located within Forest Park, but testified the rest of the area was grass. Jones also admitted he was "not exactly sure if the law specifies that [the measurement] has to be [from] a piece of playground equipment or any other piece of equipment."

**Standard of Review**

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1763 (2012). The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the fact finder. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury").

**Possession of Methamphetamine**

In his first issue, Toney contends the evidence is insufficient to establish he was intentionally or knowingly in possession of the methamphetamine. Toney specifically argues there was no evidence to link him to the methamphetamine in Byrd's possession.

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses the substance. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(a),(c) (West 2010); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West

Supp. 2013) ("'Possession' means actual care, custody, control, or management."). To prove the offense, the State is required to establish that the accused 1) exercised control, management, or care over the substance, and 2) knew the matter possessed was contraband. *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (citing *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)). Whether direct or circumstantial, the evidence must establish that the accused's connection with the controlled substance was more than just fortuitous. *Blackman*, 350 S.W.3d at 594; *Poindexter*, 153 S.W.3d at 405–06. Mere presence at a location where drugs are found is insufficient, by itself, to establish possession. *Evans*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Further, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406; *see also Blackman*, 350 S.W.3d at 594–95.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish possession of contraband include: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) incriminating statements made by the accused when arrested, (7) an attempt to flee, (8) furtive gestures, (9) an odor of contraband, (10) the presence of other contraband or drug paraphernalia, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct indicating a consciousness of guilt, (15) the accused's incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) the accused's presence in a suspicious area under suspicious

–8–

circumstances. *Evans*, 202 S.W.3d at 162 n.12; *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref'd); *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the sufficiency of the evidence to prove knowing possession. *Evans*, 202 S.W.3d at 162 n.12. However, no set formula of facts exists to dictate a finding of links sufficient to support an inference of knowing possession. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The number of linking factors present is not as important as the logical force they create to prove the crime was committed. *Evans*, 202 S.W.3d at 162; *Taylor*, 106 S.W.3d at 831.

Here, Byrd testified she entered Toney's telephone number into her phone under the contact name "Boss Man" because he often fronted her drugs. She also testified that she purchased narcotics for Toney on a number of occasions and, at Toney's request, purchased an "eight ball" of methamphetamine for him on January 19, 2012. Soto testified about a number of text messages from January 19, 2012 found on the cellphones in Byrd's purse between "Boss Man" and "Rosa" about the purchase of methamphetamine. He further confirmed the phone number entered into Byrd's phone under the contact name "Boss Man" belonged to Toney. In the telephone call he made while he was in jail, Toney said that he had two cellphones in the truck.

Toney, in a truck he owned, picked up Byrd outside a known drug house under suspicious circumstances. After Bradshaw initiated a traffic stop, he saw Toney make furtive gestures, and Bradshaw was concerned that Toney was trying to hide or destroy evidence. Byrd testified that, when Toney was stopped, he threw two scales on the floorboard of the truck. He also threw the larger baggie of methamphetamine at her and told her to hide it. A pair of digital scales was found on the floorboard of the truck. Additional drug paraphernalia was found in

Byrd's purse.  According to Byrd, Toney asked her to take responsibility for the drugs in exchange for him "being there" for her.

A number of links and other circumstances with logical force are present to sufficiently prove Toney possessed the methamphetamine.  Reviewing all the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found Toney knowingly possessed the methamphetamine.  *See Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667.  We resolve Toney's first issue against him.

## Drug-Free Zone

In his second issue, Toney argues the evidence is insufficient to establish the offense was committed in a drug-free zone.  The punishment for possession of a controlled substance is enhanced if the offense is committed in a drug-free zone.  TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (West Supp. 2013).  As relevant to this appeal, a drug-free zone includes area within 1,000 feet of a playground.  There is no dispute there is a playground in Forest Park.  Toney contends the statutory definition for playground does not include the premises surrounding the playground equipment and, therefore, the proper measurement must be from the playground equipment itself.[3]  Toney argues that, based on Jones's testimony that his measurement showed the distance between the intersection of Mirick and Main and the closest piece of playground equipment in Forest Park was 1,362 feet, the evidence was insufficient to establish the offense was committed in a drug-free zone.

---

[3]  The health and safety code defines a "playground" for purposes of a drug-free zone as:

[A]ny outdoor facility that is not on the premises of a school and that:

(A)  is intended for recreation;

(B)  is open to the public; and

(C)  contains three or more play stations intended for the recreation of children, such as slides, swing sets, and teeterboards.

TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(3) (West Supp. 2013).

However, the evidence also included the drug-free zone maps for Denison that had been filed with the county clerk. A map produced or reproduced by a municipal or county engineer for the purpose of showing the location and boundaries of drug-free zones is admissible as prima facie evidence of the location or boundaries of those areas if the governing body of the municipality or county adopts a resolution or ordinance approving the map as an official finding and record of the boundaries and location of the drug-free zones. TEX. HEALTH & SAFETY CODE ANN. § 481.135 (West 2010).[4] There is no dispute the maps show the offense occurred within a drug-free zone. Further, Bradshaw testified that, based on his work for the Grayson County Sheriff's office, he knows Forest Park is in a drug-free zone. Using Google Earth, he measured the distance from the intersection of Mirick and Main to Forest Park and determined it was approximately 964 feet. Further, according to Bradshaw, while he was following Toney, there were times Toney was closer to Forest Park than he was at the time of the stop.

It was the role of the jury to resolve the conflicting evidence, and we may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *King*, 29 S.W.3d at 562. We conclude a rational juror could have found the offense occurred in a drug-free zone. *See Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We resolve Toney's second issue against him.

---

[4] Toney notes in his brief that he objected to these maps in the trial court. However, he has not brought an issue on appeal complaining about the trial court's evidentiary rulings and has failed to make any argument or cite any authority to support the proposition the trial court erred by overruling his objections. He has, therefore, waived any complaint about the admission of these maps. *See* TEX. R. APP. P. 38.1(f), (i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 2712 (2012) (issue inadequately briefed because appellant failed to provide any argument or authority in support of contention); *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003) (issue inadequately briefed because appellant failed to apply law to facts as required under appellate rules). He also offered no evidence in the trial court that the locations and boundaries of the drug-free zones depicted on the maps were not drawn in accordance with the statutory definitions.

We affirm the trial court's judgment.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130729F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JEAN KENNETH TONEY, Appellant

No. 05-13-00729-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District
Court, Grayson County, Texas,
Trial Court Cause No. 061707.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of February, 2014.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE